REGENTS OF THE UNIVERSITY OF NEBRASKA, PLAINTIFF IN ERROR, v. JOHN L. McCONNELL, DEFENDANT IN ERROR.

1. **The Regents of the University of Nebraska,** as such corporation, may sue and be sued in matters over which express authority is given to such corporation.

2. ———. The creation of such public corporation by legislative authority is not repugnant to the constitution.

3. ———. Such public corporation is but part of the machinery employed in carrying on the affairs of state, and is subject to be changed, modified, restrained or destroyed, as the general interests and public exigencies may require, without infringing private rights.

4. ———. Under the legislative acts of 1869 and 1875, the state treasurer is made the custodian of all the university funds, to be disbursed by him upon warrants drawn by the state auditor.

5. ———. The university corporation acts simply by delegated authority, and can exercise only such powers as are expressly given to it; and not having corporate power over the university funds, it has no authority to bring and maintain an action to recover such funds.

THIS action was brought in the district court, in Lancaster county, by the "Regents of the University of Nebraska," against John L. McConnell, to recover of him the sum of about $3,400, moneys belonging to the "Regents' Fund," which came into the hands of the defendant as treasurer of the University, under his appointment by the Regency; and which the defendant refused to turn over to the state treasurer, as required by the act of 1875, [Laws of 1875, p. 154,] abolishing the office of treasurer of the University, and requiring the fund to be turned over within sixty days.

The defendant, McConnell, demurred to the plaintiff's petition;

*First.* That the petition did not state facts sufficient

to constitute a cause of action in favor of the plaintiff, and against the said defendant; and,

*Second.* That the plaintiff had no legal capacity to sue in manner and form, and for the purposes in the petition stated.

This demurrer, the court, POUND, J., presiding, sustained, and rendered judgment against the plaintiff, to which the plaintiff excepted and brought the cause here by petition in error.

*Lamb, Billingsley & Lambertson*, for plaintiff in error.

We claim as a matter of law, that being expressly empowered by the legislature to sue, the plaintiff's right is commensurate with their public duties and trust, and by a reasonable construction, includes the right to maintain this suit for these moneys. Angell & Ames on Corp., Sec. 23, 24. *Todd v. Birdsall*, 1 Cow., 260. *School District v. Wood*, 13 Mass., 192. *Tilden v. Metcalf*, 2 Day, 259. *School District v. Malcoon*, 4 Wis., 79. *East River Bank v. Judah*, 10 How. Pr., 135.

*J. R. Webster*, for defendant in error.

A public officer or board cannot in their own names, or officially, maintain an action even in cases where they are entitled to the possession and control of moneys sued for, unless specially authorized by statute. *Commissioners v. Perry*, 5 Ohio, 56. *Hunter v. Commissioners*, 10 Ohio State, 515. *State v. Grant*, 7 Blackf., 73. *State v. Wright*, 8 Id., 65.

The only proper, or possible construction of the act of 1869, to carry out its intent, or to sustain its validity, is that the regents are merely the governors of the institution, and that the institution itself is merely part of the

system of public instruction, founded, fostered and maintained by the state as a part of its educational machinery. The regents are not corporators, having any beneficial interest in the property, but mere officers of the state, mere guardians, servitors of the trusts placed in their hands, a board of governors of the institution, having only such power and such privileges as the legislature from time to time may commit to, or permit to remain in their hands. The property of the university, its realty, its personality, its funds, is the property of the state, subject absolutely to the legislative will in its government, and in the control, deposit, and disbursement of its funds—and the state may at any time without violation of any corporate right of the regents, change as it sees fit the trustee, the deposit and control of the fund, and the government and management of the institution. Perry on Trusts, Sec. 707. *Dort v. Houston*, 22 Ga., 506.

GANTT, J.

The act of Congress, approved April 19, 1864, to enable the people of Nebraska to form a constitution and state government, and for the admission of such state into the Union, granted to the state seventy-two sections of the unappropriated public lands, to be selected and located under the direction of the legislature, for the use and support of a state university and for no other purpose. The constitution adopted in pursuance of this act provides that "the principal of all funds arising from the sale or other disposition of lands or other property, granted or intrusted to the state for educational purposes, shall forever be preserved inviolate and undiminished; and the income arising therefrom shall be faithfully applied to the specific objects of the original grants or appropriations."

Under both the enabling act of Congress and the constitution of the state, it was the duty of the legislature to establish a state university, and provide for it a polity, proper and adequate for the government of such an institution. This duty was performed; and by the act of February 15, 1869, entitled "an act to establish the university of Nebraska," the institution was established under the name and style of the "University of Nebraska." The act declares its objects, vests its government in a board of regents, and confers on this board certain powers and duties, and provides for the appointment of a secretary and treasurer by the regents. Section five provides that the regents and their successors "shall constitute a body corporate to be known as 'The Regents of the University of Nebraska,' and as such may sue and be sued." It further provides that the "funds of the University shall be two, to-wit: the endowment fund, and the regents' fund;" that the state treasurer shall be the custodian of the principal of the endowment fund, which shall be invested under the advice of the governor and auditor of the state, as prescribed by law, and that the state treasurer shall pay over monthly to the treasurer of the university all moneys belonging to the regents' fund. By this act the regents are invested with the essential powers of a corporation under the corporate name of "The Regents of the University of Nebraska." And in respect to all matters, relating to the university, over which express authority is given to the corporation, there seems to be no doubt that it may sue and be sued. And the legislative authority to create such corporation, for the purpose of conducting the affairs of the university seems clear from section one, article VII, of the constitution of 1867, and is not repugnant to article VIII thereof: and the constitution of 1875 provides that the "duties and powers" of the board of regents "shall be prescribed

by law," and it declares that corporations for " charitable, *educational*, penal or reformatory purposes " shall be excepted from the inhibition that " no corporations shall be created by special laws." Constitution, Art. VIII, Sec. 9. Sec. 1, Article " Miscellaneous Corporations."

But this incorporation, under the name of " The Regents of the University of Nebraska," is not, in any sense, to be considered in the nature of a private eleemosynary corporation for the general promotion of learning, because its whole interests and franchises are the exclusive property and domain of the government itself, and, therefore, it is in the strictest sense a public corporation. Public corporations are not limited to those created for municipal purposes only, but, strictly speaking, public corporations are all such as are founded for public purposes, where the whole interests belong to the government. *Trustees of Dartmouth College v. Woodward*, 4 Wheat., 508. And such " public corporations are but part of the machinery employed in carrying on the affairs of state; and they are subject to be changed, modified or destroyed, as the exigencies of the public may demand." *Trustees v. Tatman*, 13 Ill., 30. " Over them the legislature has power, not limited by the constitution to impose such modifications, extensions or restraints, as the general interests and public exigencies may require, without infringing private rights. All corporations invested with subordinate powers, for public purposes, fall within this class, and are subject to legislative control." *Inhabitants of Yarmouth v. Trustees of North Yarmouth*, 1 Am. Law Reg., O. S., 598. Coke Litt., § 413. Vin. Abr. Corp., A., 2. *Phillips v. Bury*, 2 Term Rep., 346. *Allen v. McKeen*, 1 Sumn., 276. *People v. Morris*, 13 Wend., 325. *Penobscott Broom Corp. v. Lamson*, 16 Me., 224. Hence it is very clear that the rights and franchises of such public corporations never become vested rights as against the

state, and its charter constitutes no contract in the sense of the constitutional provision which prohibits the obligation of contracts being violated. Cooley on Const. Lim., 193.

Under the act of 1869, the university corporation had no control over or disposition of the endowment fund, and now by the act of February 23, 1875, the legislature has deemed it proper to abolish the office of treasurer of the university, and to make the state treasurer the custodian of the funds appropriated for the support and maintenance of the university, to be disbursed by him upon warrants drawn by the state auditor, in the same manner as funds appropriated for the support of other state institutions, not incorporated, are disbursed. Hence, by this latter act, the custody and control of these funds are taken from the corporation and placed in the custody of the state treasurer for disbursement; and under the settled doctrine of the law, in respect to public corporations of this kind, the legislature had the undoubted authority to take these funds from the custody of the corporation, and divest it of any corporate power over them, and having done so, we think it clear that the regents, as such corporation, have no authority, in law, to bring or maintain this action. It acts simply by delegated authority, and can exercise only such powers as are expressly given to it, or which may be necessary to carry into effect those powers specially given.

The judgment of the district court must be affirmed.

JUDGMENT AFFIRMED.