CHRISTIAN CHRISTENSEN, APPELLANT, V. CITY OF
FREMONT ET AL., APPELLEES.

FILED MAY 21, 1895. No. 7616.

1. Municipal Corporations: POWERS: ELECTRIC LIGHTING
SYSTEM. The power conferred upon cities of the second class
having over 5,000 inhabitants, to provide for and regulate the
lighting of the streets, implies the power to erect and maintain
an electric lighting system for that purpose.

2. ———: ———: ———. From the power to provide for and reg-
ulate the lighting of streets, however, no power can be implied
to erect or maintain a lighting system for the purpose of supply-
ing light to private buildings.

3. ———: ———: ———. The latter power is conferred on such
cities by Session Laws of 1889, chapter 19.

4. ———: ———: ———: APPROPRIATIONS. That act, in provid-
ing for the levy of a tax and the issuing of bonds for erecting
and maintaining a lighting system, provides how money must
be raised for the purpose when it is not already available; but
where a city already has in its general fund sufficient unappro-

priated funds, it may appropriate and use those funds for the purpose of erecting a lighting system.

5. ——— : ——— : ——— : ———.  A city of the second class having more than 5,000 inhabitants may make special appropriations for improvements at other times in other ordinances than the annual appropriation bill, provided such appropriations first receive the sanction of a majority of the electors either by petition or at an election.

APPEAL from the district court of Dodge county.  Heard below before SULLIVAN, J.

*E. F. Gray,* for appellant.

*Frank Dolezal* and *J. E. Frick, contra.*

See opinion for authorities upon the questions discussed.

IRVINE, C.

This was an action by the appellant, a citizen and taxpayer of the city of Fremont, against that city, a city of the second class containing more than 5,000 inhabitants, and its officers, seeking an injunction to restrain the defendants from proceeding with the proposed erection of an electric light system, and from using the general fund and occupation tax money for the purpose of erecting such system.  The case was heard in the district court on the petition, answer, and reply, without any evidence.  The district court dismissed the action.  No evidence having been introduced, the question is were the defendants entitled to a decree on the pleadings?

The answer contains no denials.  It consists solely of affirmative matter, most of which is denied in the reply. The petition, with so much of the answer as the reply does not deny, must, therefore, be taken as a statement of the facts.  The purpose of brevity at least will be subserved if we state the facts so found in narrative, without reproducing the pleadings.  In February, 1895, the city

found itself with something over $18,000 in its treasury in excess of the moneys which had been appropriated by the general appropriation bill of the current fiscal year, passed in July, 1894. A portion of this money was in what is known as the "general fund," collected under Compiled Statutes, chapter 14, article 2, section 52, subdivision 1, empowering such cities to levy a tax for general revenue purposes. The remainder of the money was derived from occupation taxes, levied under subdivision 8 of the same section, and not devoted to any special purpose. In February, 1895, the council passed an ordinance appropriating $18,000 from these funds for constructing an electric light plant. This ordinance was passed in pursuance of a petition of a majority of the legal voters of the city sanctioning such action. Other steps were taken leading to the advertising for bids for the construction of the plant, and the city was about to proceed therewith and make payment out of the moneys referred to when these proceedings were begun.

The appellant contends, in the first place, that the city is without power to construct such works with the fund referred to, and, in the second place, that if it had the power, the manner of its proposed exercise is unlawful. For a consideration of the first question only two facts besides those already stated are material. The first is that the funds which it is proposed to expend seem to be accumulations resulting from overtaxation for prior years. The second is that while the ordinance lying at the foundation of the proceedings provides by its terms only for the construction of an electric light plant "for lighting the city," the petition avers, and the answer does not deny, that the purpose is not only to construct a plant for lighting the streets and city property, but also to furnish light to the inhabitants of the city for hire, and that for this purpose the cost of the plant will be $10,000 more than the cost of a plant simply to light the streets and public buildings.

The city of Fremont is governed by the provisions of article 2, chapter 14, Compiled Statutes, relating to cities of the second class having more than 5,000 inhabitants. Section 52 of that article contains a partial enumeration of the powers vested in such cities. Subdivision 51 of that section gives to such cities power "to provide for and regulate the lighting of the streets, and the erection of lamp posts." Subdivision 17 of the same section, as originally enacted, authorized the city to make contracts with and authorize any persons, company, or association to erect gas works and give such persons, company, or association the exclusive privilege of furnishing gas to light the streets, lanes, and alleys of said cities for any length of time, not exceeding twenty-one years. In 1891 the latter section was amended so as to include electric lights as well as gas. In 1889 an act was passed (Session Laws, 1889, ch. 19, sec. 1) providing that " any city of the second class in this state shall have the power, and is hereby authorized, to establish and maintain a system of electric lights for such city, and the city council shall have the power to levy a tax, not exceeding five mills on the dollar in any one year, for the purpose of establishing, extending, and maintaining such system of electric lights." By section 2 of this act it was provided that if the tax authorized would be insufficient for the purpose, bonds might be issued on petition and vote to that end. Subsequent sections provided for the construction of the works and for their management after construction. There is no other legislation, so far as we are aware, bearing directly upon the matter.

As a starting point for the consideration of the question presented we may adopt the language of Judge Dillon, that a municipal corporation "possesses, and can exercise, the following powers, and no others: First, those granted in express words; second, those necessarily or fairly implied in or incident to the powers expressly granted; third, those essential to the declared objects and purposes of the

corporation—not simply convenient, but indispensable."
(1 Dillon, Municipal Corporations [4th ed.], sec. 89.)
This language has been so often quoted by courts of last
resort, including the supreme court of the United States,
that it may now be taken as the accepted formula in regard
to municipal powers.   Judged by this statement, we have
no hesitation in declaring that the power to provide for
and regulate the lighting of streets and the erection of
lamp posts fairly implies the power to erect gas works or
an electric light plant to be used by the city for the pur-
pose of lighting the streets. (*State v. City of Hiawatha*, 53
Kan., 477; *City of Crawfordsville v. Braden*, 130 Ind.,
149; *Mauldin v. City Council of Greenville*, 33 S. Car.,
1.)   On the same principle, it has been held that a grant
of power to establish and regulate markets implies the
power to purchase and to hold land for the purpose of a
market. (*Ketchum v. City of Buffalo*, 14 N. Y., 356.)  And
the simplest and most obvious application of the principle
is perhaps found in the apparently self-evident proposition,
that a grant of power to prevent and suppress fires and to
raise money for supporting the fire department implies the
power to purchase engines and apparatus. (*Green v. City
of Cape May*, 41 N. J. Law, 45.)   Our attention is called
to the case of *Spaulding v. Peabody*, 153 Mass., 129, hold-
ing that under somewhat similar grants of power a city may
not erect and maintain works for the manufacture and dis-
tribution of electric light for lighting the streets.   But this
case is based to a large extent on a consideration of pecul-
iar Massachusetts statutes and a narrow construction there-
tofore placed upon them by the court.   The case is opposed
to an otherwise practically uniform array of authorities.
The reasoning on the general question is far from satisfac-
tory, and while it is still a recent case, it has encountered
already considerable adverse criticism.   It is by no means
so clear that from the power to provide for the lighting of
streets any power is implied to maintain a plant for the

purpose of furnishing light for private buildings. It has been said that under an express power to erect gas, works or water works the uniform rule is that a city is not limited to furnishing gas or water for use in public places, but may furnish the same for private use. (*Thomson-Houston Electric Co. v. City of Newton*, 42 Fed. Rep., 723.) But a power in express terms to erect a lighting plant for the city and a power merely to provide for lighting the streets are very different in their effect. The former power might imply a right to maintain the plant for all purposes for which such plants are generally used, while the latter grant might reasonably be restricted to its terms.

In the *City of Crawfordsville v. Braden*, 130 Ind., 149, it was held that in the absence of any express power a municipality has the inherent power to light its streets, and to determine the means to be adopted for that purpose, extending to the construction and maintenance of works therefor. Having gone so far, the court proceeds to hold that having the power for that purpose, the city may also maintain works to furnish light for private buildings. The reasoning resorted to in support of the last conclusion is far from convincing. The court says that to light residences and places of business of the inhabitants is a legitimate exercise of the "police power." Elsewhere, in the opinion, the police power is referred to as a term "difficult to precisely define or limit." If the view of the Indiana court is to prevail, it might better be said that it is a term without definition or limitation. The result of some of the cases relating to the police power arouses the suspicion that courts have sometimes been disposed to seek in this term an excuse for sustaining acts seemingly conducive to the general welfare where no satisfactory legal reason for such action can be found. We think the case under discussion illustrates the danger of seeking that refuge. The court finds the police power involved in the lighting of houses from the fact that an incandescent electric light is

safer to property and more conducive to health than the ordinary light. The argument is, in brief, thus : A municipality possesses inherently the police power. The police power exists for purposes of public health and safety. The incandescent electric light is safer and more wholesome than other lights. Therefore, without any grant of power in the premises, a city may maintain electric light works for the purpose of selling light to its inhabitants for use in their business houses and residences. No further comment on this case seems necessary.

In *Mauldin v. City Council of Greenville*, 33 S. Car., 1, it was held that a general grant of power to hold property, and to establish ordinances respecting the streets, for the security and convenience of the city, for preserving life and property therein, and for securing the peace and good government of the same, conferred express power to purchase and implied power to maintain an electric light plant for lighting the streets and public buildings, but not for furnishing light to private residences and places of business. It was said that powers are given solely for the purpose of government and not to enter into private business of any kind outside of the scope of government.

Other recent authorities to which our attention has been directed throw little light on the precise question we are now considering. Thus, in *Metcalfe v. City of Seattle*, 1 Wash., 297, no question of power was involved. The only question was the construction of a statute limiting indebtedness and as to the number of voters required on a proposition submitted. The case of *Thomson-Houston Electric Co. v. City of Newton*, 42 Fed. Rep., 723, construes an Iowa statute granting power to establish and maintain electric light plants as extending to the furnishing of light to the inhabitants; and the case of *Smith v. City of Nashville*, 88 Tenn., 464, holds that a power to provide the city with water-works implies a power to furnish water to the inhabitants for private use.

Following the rule stated by Judge Dillon, it is quite clear that a power to provide for and regulate the lighting of streets does not expressly authorize the maintenance of a plant to light private buildings for pay. It is equally clear that the exercise of such a power is not indispensable to the fulfillment of the purposes of the corporation. Nor can we say that such a power is implied in, or incident to, the express power to provide for lighting the streets. We are constrained to agree with the supreme court of South Carolina, that while the power to light the streets authorizes the erection and maintenance of a plant for lighting the streets, it does not authorize one for supplying light to private buildings. The act of 1889, above referred to, extends the grant of power to the purpose in question. It authorizes the establishment and maintenance of a "system of electric light for such city." The cases already cited, of *Thomson-Houston Electric Co. v. City of Newton* and *Smith v. City of Nashville*, would be applicable under that grant. But the later sections of the act provide for fixing and collecting rates to be charged the inhabitants for the use of lights and so render the object of the act clear beyond question. We have, then, the city empowered by the act of 1889 to erect and maintain a plant for all the purposes here contemplated. This act authorizes a levy of a tax to create a special fund for the purpose, and if such tax be insufficient the issuing of bonds after a petition and election on the question. The city of Fremont does not propose to levy a tax, neither does it propose to issue bonds. On the other hand, it proposes to use the moneys already accumulated from general taxation, and from occupation taxes. We have thus elaborated on the grant of powers because the conclusions reached convince us that in the absence of the act of 1889 the city could not have devoted any revenue to the purpose of maintaining a plant to furnish light for private consumers. Its right to do so is derived solely from the act of 1889, which contains authority to provide means

therefor in a special manner. The precise question then
is, whether this manner of payment is exclusive, or whether,
on the other hand, moneys already being available from
other sources, they may be devoted to this purpose. The
money in the general fund was collected under subdivision
1, authorizing the levy of taxes for general revenue pur-
poses. Subdivision 8, authorizing occupation taxes, makes
no special disposition thereof, and moneys so collected are,
therefore, available for any general municipal purpose.

In *Merrill Railway & Lighting Co. v. City of Merrill,*
80 Wis., 358, a tax for general city purposes, not exceed-
ing two per cent of the assessed valuation, was authorized.
It was elsewhere provided in the charter that in addition
to the amount limited for general city purposes special
taxes might be levied for certain designated purposes,
among them "gas purposes," but that no such tax should
be levied until recommended by the council and approved
by a vote of the people. It was held that the lighting of
streets was a general municipal purpose, and that without
a vote and without a special tax, the two per cent tax
might be used for that purpose. This case does not extend
so far as the one before us, because it was not contemplated
to use any portion of the tax except for a public municipal
purpose. But we think the general principle is applicable.
If the city of Fremont did not have in its treasury money
available for the purpose contemplated, then the act of
1889 provides how the money might be raised; but if it
has money in its treasury available for the purpose, we see
no reason why an indebtedness should be incurred, or ad-
ditional taxation imposed. The act of 1889, in so far as
it relates to taxation and bonds, provides for the raising of
money when it is necessary to raise it; but we do not think
that the means there provided must be resorted to when
money is already available. The funds which it is pro-
posed to expend are available for any municipal purpose
for which a special tax is not necessary, or a special form

of taxation provided.    All the occupation tax seems to be available for any purpose for which the general fund is available.    If a special tax were levied for this purpose it would be collected in the same manner as the general fund has been collected; if bonds were issued, they would have to be paid by taxes collected in like manner.    The money being now in the treasury collected for general revenue purposes, and the act of 1889 conferring upon the city complete power to erect and maintain such a plant as is contemplated, we think the power exists to use the accumulated fund to pay therefor.

We are thus brought to a consideration of the second contention, to-wit, the power being conceded, has the city proceeded in the proper manner to execute it?

Section 39, article 2, chapter 14, Compiled Statutes, is as follows: "The city council shall, within the last quarter of each fiscal year, pass an ordinance, to be termed the 'annual appropriation bill,' in which such corporate authorities may appropriate such sum or sums of money as may be deemed necessary to defray all necessary expenses and liabilities of such corporation, not exceeding in the aggregate the amount of tax authorized to be levied during the then ensuing year; and in such ordinance shall specify the objects and purposes for which such appropriations are made, and the amount appropriated for each object or purpose.    No further appropriations shall be made at any other time within such fiscal year unless the proposition to make such appropriation has been first sanctioned by a majority of the legal voters of such city, either by a petition signed by them, or at a general or special election duly called therefor; and all appropriations shall end with the fiscal year for which they were made; *Provided,* That the fund arising from 'road taxes,' as in this chapter provided, shall be deemed specially appropriated, and shall not be included in the annual appropriation ordinance; *And provided further,* That no warrant shall be drawn, account allowed;

or debt contracted with reference to such fund unless there shall be money in the treasury for the payment thereof; *And provided further*, That nothing herein shall be construed to prohibit the council from appropriating other money in the annual appropriation bill for the use of streets, grades, and bridges."

Section 40 is as follows: "Before such annual appropriation bill shall be passed the council shall prepare an estimate of the probable amount of money necessary for all purposes to be raised in said city during the fiscal year for which the appropriation is to be made, including interest and principal due on the bonded debt and sinking fund, itemizing and classifying the different objects and branches of expenditures, as near as may be, with a statement of the entire revenue of the city for the previous fiscal year, and shall enter the same at large upon its minutes, and cause the same to be published four weeks in some newspaper published or of general circulation in the city."

Section 41, so far as it is applicable, is as follows: "The mayor and council shall have no power to appropriate, issue, or draw any order or warrant on the treasury for money, unless the same has been appropriated or ordered by ordinance, or the claim for the payment of which such order or warrant is issued has been allowed, according to the provisions of this chapter, and appropriations for the class or object out of which such claim is payable has been made as provided in section 41 (39). Neither the city council, nor any department or officer of the corporation, shall add to the corporation expenditures in any one year anything over and above the amount provided for in the annual appropriation bill for that year, except as herein otherwise specially provided; and no expenditure for any improvement, to be paid for out of the general fund of the corporation, shall exceed in any one year the amount provided for such an improvement in the annual appropriation bill."

In June of 1894 an estimate was prepared in accordance with section 40, and a tax levy made. In July the annual appropriation bill was passed. Neither the estimate, the levy, nor the appropriation bill included the electric lighting plant. In February, 1895, however, a petition of a majority of the legal voters of the city sanctioning such action having been presented, an ordinance was passed appropriating the money which the city now seeks to expend for this purpose. It is argued that this is not a lawful appropriation, and the argument is based on that part of section 41, to the effect that no expenditure for any improvement to be paid for out of the general fund of the corporation shall exceed the amount provided for such an improvement in the annual appropriation bill. We think that this clause should be read in connection with that preceding, to the effect that nothing shall be added to the corporation expenditures above the amount provided for in the annual appropriation bill except as is otherwise specially provided, and the whole section in connection with section 39, authorizing appropriations outside the appropriation bill, when sanctioned by a majority of the legal voters, either by petition or at an election. The requisite petition was presented in this case, and we think it authorized the special appropriation.

The cases of *City of Blair v. Lantry*, 21 Neb., 247, and *McElhinney v. City of Superior*, 32 Neb., 744, are not in point, because in those cases there had been no appropriation whatever.

JUDGMENT AFFIRMED.