ALOIS SLEPICKA, ET AL., APPELLANTS, v. THE CITY OF WILBER, A MUNICIPAL CORPORATION, ET AL., APPELLEES.

34 N. W. 2d 646

Filed November 12, 1948. No. 32475.

*John E. Mekota,* for appellants.

*C. R. Stasenka, Clarence Kunc, Cline, Williams & Wright, Poppenhusen, Johnston, Thompson & Raymond,* and *Perry & Perry,* for appellees.

Heard before PAINE, CARTER, MESSMORE, YEAGER, CHAPPELL, and WENKE, JJ.

WENKE, J.

Plaintiffs, as residents, electors, and taxpayers of the City of Wilber, and patrons of its electrical system, brought this action in the district court for Saline County. The purpose of the action is to permanently enjoin the defendants, the City of Wilber, its mayor, councilmen, and clerk; the Fairbanks Morse and Company, a corporation; and The First Trust Company of Lincoln, Nebraska, a corporation, from carrying out any and all contracts which they have entered into relating to the city of Wilber's electric light and power plant and distribution system. The basis for the relief asked is the claim that the officials of the city acted without authority and, because thereof, the contracts entered into are void. From an adverse ruling, their motion for new trial having been overruled, the plaintiffs appeal.

The question presented by this appeal is, did the governing body of the city of Wilber, a city of the second class, under the facts as herein set forth but without a vote of its electors so authorizing, have authority under the provisions of sections 18-412 and 70-503, R. S. 1943, to purchase and have installed the diesel engines and electric generating equipment, for which it had contracted with the appellee, Fairbanks Morse and Company at a consideration of $118,374, and to issue and sell its revenue bonds, pledging the revenue and earnings of its electric light and power plant and system, in payment thereof?

The record discloses that as early as 1900 the board of trustees of Wilber, then a village, pursuant to a petition of a majority of its legal voters, passed an ordinance authorizing the construction of an electric lighting system and on October 23, 1900, let a contract for the construction of the plant to John T. Burk of Omaha for a consideration of $5,318.

Subsequent thereto, by an election held on May 15, 1913, the voters of Wilber, by a vote of 178 to 32, authorized the issuance of bonds in the sum of $12,000 to establish an electric lighting and steam heating system. On July 18, 1913, contracts were let pursuant thereto. As a result there was placed in the electric light and power plant of Wilber two steam engines with generators attached. One was of 75 and the other of 50 kilowatt capacity.

This generating capacity soon proved to be inadequate for the needs of Wilber for as early as 1929 the city started buying part of its electrical energy from outside sources. The record shows that the demand for electrical energy by the patrons of the Wilber system has greatly increased, particularly so in the last few years. Although a part of the electrical energy used by the city was purchased as early as 1929 the city continued to use both generators. It appears that about 1932 it discontinued their use during the summer months. It should be here stated that the light and power plant of Wilber included a steam heating system for its business district and that the steam engines used to generate electricity were run directly off of that system. This continued until about 1939 when the smaller of these two units was sold and only the 75 kilowatt unit remained. It was used during the winter months until about 1941. Then its active use was discontinued and it was kept for stand-by service only. A fair observation of this unit would indicate that it had become old, obsolete, and was inefficient to operate. While it could be maintained and operated it was not a practical

thing to do and, as has already been indicated, it had become entirely inadequate for the city's needs.

In 1947 the city of Wilber had its engineer prepare plans and specifications for improvements to its municipal electric system together with an estimate of the cost thereof. Pursuant to notice given contractors the city, on December 22, 1947, accepted the bid of Fairbanks Morse and Company in the sum of $118,374 to furnish and install said improvements and on that date entered into a contract with it for that purpose. The improvements, without going into too much detail, consisted of furnishing and installing three 300 horsepower diesel engines with generating units having a total capacity of 600 kilowatts, the material for rebuilding the switchboard, a cooling system for the engines, capacitors, transformer, fuel oil tanks, lubricating oil reclaimers, and other miscellaneous materials and the supplies and labor necessary to complete the work as in the plans and specifications set forth.

To finance the cost of these improvements the city of Wilber, on December 29, 1947, entered into a contract with The First Trust Company of Lincoln, Nebraska, whereby the latter agreed to buy $125,000 of revenue bonds of the city secured by the revenue and earnings of the electric light and power plant and system of the city and, on January 14, 1948, the city council passed and approved an ordinance authorizing the issuance thereof.

These improvements will fully meet the present demands of the city for electrical energy and were planned so as to have a reserve sufficient to meet any normal increase for some years in the future.

Section 70-503, R. S. 1943, which is a part of Initiated Law No. 324 (Laws 1931, c. 116, § 3, p. 337), provides, insofar as here material, as follows: "* * * any city, village * * * shall have the power and authority, by and through its governing body * * * to provide for or to secure the payment of the cost or expenses of pur-

chasing, constructing, or otherwise acquiring, extending and improving any real or personal property necessary or useful in its operation of any electric light and power plant, distribution system or transmission lines, by pledging, assigning, or otherwise hypothecating, the net earnings or profits of such * * * city or village, derived, or to be derived, from the operation of such electric light and power plant, distribution system or transmission lines, and to that end, to enter into such contracts and to issue such warrants or debentures as may be proper to carry out the provisions of this section."

Section 18-412, R. S. 1943, originally enacted by the 1935 Legislature (Laws 1935, c. 38, § 1, p. 153), provides in part, insofar as material here, as follows: "The requirement herein of a vote of the electors, however, shall not apply when a city or village seeks to pledge or hypothecate such revenue and earnings, or issue revenue bonds or debentures, solely for the maintenance, extension or enlargement of any electric light and power plant, distribution system, or transmission lines owned by such city or village."

It should be here stated, as is apparent from that part of section 18-412, R. S. 1943, above quoted, that the act also provides that where a city or village does not own an electric light and power plant, distribution system, or transmission lines that then, in order for the city or village to construct, purchase or otherwise acquire such and issue revenue bonds pledging the earnings in payment thereof that then such city or village must first be authorized to do so by a vote of its electors.

The foregoing was apparently enacted because of the construction we placed on Initiated Law No. 324 in Interstate Power Co. v. City of Ainsworth, 125 Neb. 419, 250 N. W. 649. Therein we said: "A careful examination of the title to the act, which is quite lengthy, clearly discloses that it applies only to such cities or villages as are engaged in the generation, transmission or distribution of electrical energy, and provides that such cities

may extend, improve and add to their plants and pay the cost of such extensions, additions or improvements by pledging the future earnings of such plants. Clearly, the act does not apply to a city which does not own any electric light or power plant or distribution system. Neither express nor implied power is conferred by said chapter 116 to acquire an electric light and power plant and pay for it by pledge of future earnings."

In Interstate Power Co. v. City of Ainsworth, *supra,* we approved the following from 1 McQuillin, Municipal Corporations (2d ed.), § 367, p. 1007: "That the only powers a municipal corporation possesses and can exercise are: (1) Those granted in express terms; (2) those necessarily or fairly implied in, or incident to, the powers expressly granted; and (3) those essential to the declared objects and purposes of the municipality, not merely convenient, but indispensable." See, also, Consumers Coal Co. v. City of Lincoln, 109 Neb. 51, 189 N. W. 643.

Even prior to Initiated Law No. 324 we said a city had authority to contract for improvements of an electric light and power plant already in operation and to pay for such improvements with available money on hand or with the net earnings of the plant. See Carr v. Fenstermacker, 119 Neb. 172, 228 N. W. 114.

And, after the adoption of Initiated Law No. 324, we held in Southern Nebraska Power Co. v. Village of Deshler, 130 Neb. 598, 265 N. W. 880: "Where a village has acquired an electric light plant and distribution system, the board of trustees thereof may, by virtue of section 70-603, Comp. St. Supp. 1931, (now sec. 70-503, R. S. 1943) contract to enlarge and extend the same and issue warrants pledging the future earnings of the plant, without liability upon the village for their payment, * * * ."

What has been said of section 70-503, R. S. 1943, is also true of section 18-412, R. S. 1943.

While the amount of the contract would indicate that the improvements contemplated were extensive and a

substantial enlargement of the power plant, nevertheless the city officials having authority to do what they did it is not our right to question their judgment for as stated in Southern Nebraska Power Co. v. Village of Deshler, *supra*: "The ordinary business affairs of a municipality are committed to the corporate authorities, and the courts will not interfere except in a clear case of mismanagement or fraud."

And as stated in Best v. City of Omaha, 138 Neb. 325, 293 N. W. 116: "It is not the policy of the law to prevent a public administrative body from properly exercising its discretion in administering the affairs committed to its charge for the best interests of the municipality that it represents."

As stated in Veldman v. City of Grand Rapids, 275 Mich. 100, 265 N. W. 790: "In order to warrant the interposition of a court of equity in municipal affairs, there must be a malicious intent, capricious action or corrupt conduct, something which shows the action of the body whose acts are complained of did not arise from an exercise of judgment and discretion vested by law in them." Nothing of that nature appears in the record.

" 'In construing a statute, words should be given their usual meaning.' State v. Byrum, 60 Neb. 384." State ex rel. Thayer v. School District, 99 Neb. 338, 156 N. W. 641.

We think, by giving the usual meaning to the words extending, improving, maintenance, extension, and enlargement as used in these statutes, it was intended that the officials of a city or village having an established electric light and power plant, distribution system, or transmission lines should have authority to keep them modern, efficient, and of sufficient size to meet the public's needs and demands.

Nor do we think the fact that a city or village does not immediately do so, upon its plant becoming insufficient and inefficient, but temporarily buys a part and subsequently all of the electrical energy it needed from an out-

side source, prevents it from doing so. The authority to operate the utility having been granted by the voters and not having been taken away, it still exists. See Indiana Service Corp. v. Town of Warren, 206 Ind. 384, 189 N. E. 523.

For the reasons stated we find the acts of the city officials to have been within their authority and the judgment of the trial court is therefore affirmed.

AFFIRMED.

SIMMONS, C. J., participating on briefs.