UNITED COMMUNITY SERVICES, A CORPORATION, APPELLEE,
v. THE OMAHA NATIONAL BANK, A CORPORATION, APPELLEE,
IMPLEADED WITH OMAHA PUBLIC POWER DISTRICT, A
CORPORATION, APPELLANT.
77 N. W 2d 576

Filed June 15, 1956.   No. 33912.

*Fraser, Connolly, Crofoot & Wenstrand,* for appellant.

*Morsman, Maxwell, Fike & Sawtell,* for appellee United Community Services.

*Wells, Martin, Lane, Baird & Pedersen,* for appellee The Omaha National Bank.

*Clarence S. Beck,* Attorney General, *Clarence A. H. Meyer,* and *Kennedy, Holland, DeLacy & Svoboda,* amici curiae.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

WENKE, J.

The United Community Services, a corporation, brought this action in the district court for Douglas County against the Omaha Public Power District and The Omaha National Bank. The purpose of the action is to determine whether or not the Omaha Public Power District, which we shall hereinafter refer to as the district, had legal authority to make the pledges that it did to the plaintiff, which we shall hereinafter refer to as

appellee. The trial court found that the pledges made were in the nature of business expenditures which the district had the right to make under its general powers. It entered a decree accordingly. Its motion for a new trial having been overruled, the district took this appeal therefrom.

When this court heard the case being orally argued the first time, it became apparent that all parties involved were interested solely in having the trial court's decree sustained. Such fact is evidenced by the briefs. It appeared to us then as it still does, that the matter involved is of substantial public concern and should be fully presented by both sides in order to give this court a better opportunity of being informed as to the questions involved. For that purpose we continued the oral hearing thereof on February 8, 1956, and directed the Attorney General to appear and file a brief for that purpose. This he did on March 16, 1956. Appellee, in its reply to the brief so filed, is quite critical of the position taken therein by the Attorney General. In presenting a case to this, or any other court, counsel should confine their remarks to the facts thereof and the law applicable thereto. Language critical of one's adversary, or of a court, has no place in such procedure.

The nature of the case is one seeking a declaratory judgment to determine the right of a public power district to make contributions to a community chest operating within the boundaries of the territory served by such district; first, under its general statutory powers, and second, under a statute passed by the 1951 Legislature giving such district the specific power to do so under the conditions therein set forth. (Now §§ 14-1106 and 14-1107, R. R. S. 1943.)

Appellee, United Community Services, a Nebraska corporation with its principal place of business in Omaha, is a nonprofit charitable organization without capital stock. It is successor to the Omaha Welfare Federation and Community Chest, a Nebraska corpora-

tion, and is commonly referred to as "Community Chest." It annually conducts a campaign in the city of Omaha to collect funds in support of numerous properly accredited and affiliated agencies engaged in charitable and eleemosynary purposes, which funds are used by these agencies to carry on their work exclusively within the limits of the city, a city of the metropolitan class, for the welfare of the people therein. As an example, in 1954 it collected $1,234,869 for this purpose.

Appellant is a public power district organized under Chapter 70 of the Nebraska statutes and has the usual powers of a public corporation. It is primarily engaged in the operation of an electrical utility, being the sole distributor of electrical energy, which it produces, to the residents of the district it serves, which includes the city of Omaha. It does not have power to tax, so none of its revenues are derived from that source.

For each of the years 1950 and 1951 the district, by separate resolutions of its board of directors, contributed and paid to appellee the sums of $28,000 and $32,000 respectively. However, before doing so, an indemnifying agreement was entered into by the parties with The Omaha National Bank, hereinafter referred to as the bank, whereby appellee deposited with the bank $75,000 in principal of United States securities to guarantee that a refund of these contributions would be made to the district if it should be judicially determined that the contributions were made without legal authority.

In each of the years 1952, 1953, and 1954 the district, by separate resolutions of its board of directors which contain findings and impose requirements to meet all the provisions of the law relating thereto as passed by the 1951 Legislature, authorized contributions to be made to appellee in the respective amounts of $36,800, $39,000, and $39,000. The evidence shows these amounts were not in excess of that authorized by the statute. However, these amounts were never paid to appellee.

It is to enforce these pledges, and to relieve itself from

the continuance of its obligation to keep the securities on deposit with the bank under the indemnifying agreement hereinbefore referred to, that appellee brought this action. It thereby seeks to have determined whether or not the district was legally authorized to make the foregoing contributions.

Eleemosynary means relating or devoted to charity; given in charity; having the nature of alms. See Webster's New International Dictionary (2d ed.), p. 829.

In 10 Am. Jur., Charities, § 3, p. 585, the legal meaning of charity is stated as: "* * * a gift, to be applied consistently with existing laws, for the benefit of an indefinite number of persons, by bringing their hearts under the influence of education or religion, by relieving their bodies from disease, suffering, or constraint, by assisting them to establish themselves for life, or by erecting or maintaining public buildings or works or otherwise lessening the burdens of government." See, also, 142 A. L. R. 1076; 14 C. J. S., Charities, § 1(a), p. 410; 17 McQuillin, Municipal Corporations (3d ed.), § 47.01, p. 1.

"It is the general rule that a gift of its property by a corporation not created for charitable purposes is in violation of the rights of its stockholders and is ultra vires, however worthy of encouragement or aid the object of the gift may be." 6A Fletcher, Cyclopedia Corporations (Perm. ed.), § 2939, p. 667.

And, as stated in 10 McQuillin, Municipal Corporations (3d ed.), § 28.43, p. 106: "* * * a municipality cannot give away its property or expend money for purposes other than corporate ones, and it follows that a municipality has no power in any manner to dispose of property of the corporation without consideration, where not for a corporate purpose."

But the district contends it has the lawful right to make these contributions under its general powers, since what was done results in benefits to the district, that is, that they are ordinary expenses and not a gift. To

support this theory appellee offered evidence to the effect that the district's 980 active and 83 retired employees, and their families, take advantage of some of the facilities which these agencies supply; that it helps the morale of these employees because the district supports the community chest and therefore they are more loyal and efficient employees; that it helps protect the district's property by reason of the fact that the programs of these agencies curb juvenile delinquency; that by doing so the district discharges a duty to the public of the community which it serves and thus creates good public relations; that a good community welfare program helps draw new business to Omaha which the district will have the opportunity of serving; and that all this will result in increased revenue and lower rates. It is also the thought of the district officers that as one of the leading businesses in Omaha it is important for it to accept civic responsibility in the community which it serves and properly discharge its duties to the public thereof.

A summary of the foregoing is contained in each of the resolutions adopted by the board of directors, the last one being as follows: "That it is hereby found and determined that to make a contribution to the 1953 (1954) campaign of United Community Services will protect and increase the safety of its property and promote and aid the health and welfare of its employees and of The City of Omaha; that it will enable the employees to render more efficient service to Omaha Public Power District and will enable the District to better discharge its duties to the public, and the Board of Directors does further find that such a contribution will be for the best interests of the District in its proprietary capacity and its relations with the public generally."

Section 70-602, R. R. S. 1943, provides in part that: "A district may be created as hereinafter provided, and when so created, shall be a public corporation and politi-

cal subdivision of this state, and may sue or be sued in its corporate name."

In regard thereto we have said that: "* * * a public corporation, authorized by the legislature and organized pursuant thereto to carry out functions that have been determined to be for a public purpose and the general welfare of the people, is an arm or branch of the government for this purpose and under the plenary control of the legislature and therefore a governmental subdivision of the state within the terms of section 2, art. VIII of the Constitution, as amended in 1920." Platte Valley Public Power & Irr. Dist. v. County of Lincoln, 144 Neb. 584, 14 N. W. 2d 202, 155 A. L. R. 412. See, also, Regents v. McConnell, 5 Neb. 423.

The Legislature gave to public power districts all the usual powers of a corporation organized for public purposes. § 70-625, R. R. S. 1943. These are more fully set forth in section 70-626, R. R. S. 1943, and section 70-655, R. R. S. 1943. They are intended to permit the business of the district to be operated in a successful and profitable manner.

We have said that the following applies to a municipal corporation in exercising the power it possesses when functioning in a proprietary capacity: "* * * a municipal corporation 'possesses, and can exercise, the following powers, and no others; First, those granted in express words; second, those necessarily or fairly implied in or incident to the powers expressly granted; third, those essential to the declared objects and purposes of the corporation—not simply convenient, but indispensable.' Christensen v. City of Fremont, 45 Neb. 160, 63 N. W. 364." Nelson-Johnston & Doudna v. Metropolitan Utilities Dist., 137 Neb. 871, 291 N. W. 558. See, also, Slepicka v. City of Wilber, 150 Neb. 376, 34 N. W. 2d 646. The same is true of public corporations engaged in proprietary functions. As held in State ex rel. Johnson v. Consumers Public Power Dist., 143 Neb. 753, 10 N. W. 2d 784, 152 A. L. R. 480, by quoting from 29

C. J. S., Electricity, § 15, p. 521: "Companies chartered for the purpose of supplying the public with electricity * * * have such lawful rights and powers as are clearly and expressly granted, together with such implied * * * powers as are reasonably * * * necessary to enable them to exercise those expressly conferred, and to enable them to accomplish the objects of their creation. All rights and powers not thus granted are withheld."

In Nelson-Johnston & Doudna v. Metropolitan Utilities Dist., *supra,* in dealing with this subject, we said: "The authority given a municipality to engage in the operation of a business enterprise carries with it the power to conduct it in the same manner in which a private corporation would deal with its property under similar circumstances." See, also, Greenwood v. City of Lincoln, 156 Neb. 142, 55 N. W. 2d 343, 34 A. L. R. 2d 1203; State ex rel. Johnson v. County of Gage, 154 Neb. 822, 49 N. W. 2d 672. We think the same would be true of all public corporations authorized to engage in proprietary functions.

Since we have held that a district, in the operation of its business, should be treated in the same manner as a private corporation, appellant cites cases as controlling which hold that private corporations may expend funds for purposes, as was here done, on the basis that they are proper operating expenses. It is true there are some courts, both state and federal, that have come to such a conclusion independent of statutory authority, however, generally the authority to do so exists by statute or provisions of the Internal Revenue Code and Treasury Department directives issued pursuant thereto. The same is true in this state since the 1953 Legislature passed what is now section 21-1,165, R. R. S. 1943, authorizing private corporations to contribute to charitable undertakings or enterprises.

In this jurisdiction, under the general powers granted public corporations, the revenues derived are required to be devoted to the purposes for which the corporation

is being operated, that is, the payment of operating expenses, indebtedness, and repairs, extensions, and improvements of the facilities. The diversion of the revenues to purposes other than these cannot be approved as incident thereto. While we are not unmindful of the fact there is some reasonable basis for the argument made, particularly in view of the evidence adduced to the effect that these contributions bring some benefits to the district and therefore should be considered as operating expenses, nevertheless, we think the matter of subjecting all such public corporations to solicitations by all classes of nonprofit agencies serving a public purpose is a matter of such grave public concern that it should be left with the Legislature which has plenary power over them. There the pros and cons of the matter can be fully presented and that body determine the public policy in regard thereto. We think the purposes served by these agencies are very worthy of everyone's charity but whether or not the revenue of public corporations should be permitted to be contributed for those purposes through these agencies, and to what extent, is, we think, a matter for the Legislature and not the courts. In the absence of express statutory authorization we find the district was without authority to make these contributions.

In this respect we have not overlooked the principle applicable as to when courts will interfere with the actions of corporate authorities in handling the ordinary business affairs entrusted to them. See Slepicka v. City of Wilber, *supra*. But these principles have no application if such corporate authorities act, as here, without authority.

The 1951 Legislature dealt with the subject by passing L. B. 447, which is now sections 14-1106 and 14-1107, R. R. S. 1943. They provide as follows:

"For the purpose of promoting and aiding in the health and welfare of any city of the metropolitan class in which it may be operating, any public corporation or

political subdivision in the State of Nebraska, which is engaged in a business in a proprietary capacity in a city of the metropolitan class, such as the production or furnishing of light, power, gas, water, or any other utility to the public, and which proprietary activities of such public corporation or political subdivision are not supported directly by taxation, may use its funds for charitable or eleemosynary purposes." § 14-1106, R. R. S. 1943.

"Any such public corporation or political subdivision in the State of Nebraska which is engaged in a business in a proprietary capacity in a city of the metropolitan class may contribute from its funds derived or to be derived from its proprietary activities to any association or corporation in a city of the metropolitan class which is organized or existing without profit to its officers, directors, or members and which operates exclusively for charitable or eleemosynary purposes for the welfare of the public; Provided, the governing body of such public corporation or political subdivision shall before making such contribution find and determine by the vote of two-thirds of all its members that to make such contribution will protect and increase the safety of its property and promote the health and welfare of its employees and enable them to render more efficient service to such public corporation or political subdivision and enable it to better discharge its duties to the public; and provided further, that the association or corporation to which such contributions are made shall so operate that the funds contributed shall be used within the limits of the city of the metropolitan class for the purposes set forth in this act. Such contributions shall not in any one year be in excess of one half of one per cent of the annual gross receipts of such public corporation or political subdivision in that year, which shall be computed on the basis of the receipts derived within the corporate limits of such metropolitan city." §14-1107, R. R. S. 1943.

Are the functions being served by these agencies for

a public purpose? What is a public purpose is primarily for the Legislature to determine. However, in Platte Valley Public Power & Irr. Dist. v. County of Lincoln, *supra*, we said that: "A public purpose has for its objective the promotion of the public health, safety, morals, security, prosperity, contentment, and the general welfare of all the inhabitants."

While the revenues received by the district in the operations of its business are not public funds in the same sense as those derived from taxation, however, they are public funds collected by the district for certain purposes and the Legislature may, under its control of the district, authorize their expenditure for a public purpose beneficial to such district and those immediately interested therein but under the restrictions and limitations imposed on the Legislature by the Constitution.

The state Constitution is not a grant, but a restriction of legislative power, consequently courts can enforce only those limitations which the Constitution imposes. Elmen v. State Board of Equalization & Assessment, 120 Neb. 141, 231 N. W. 772.

Administrative construction only becomes important in case provisions of a statute are of doubtful meaning. Mogis v. Lyman-Richey Sand & Gravel Corp., 189 F. 2d 130. Likewise legislative construction is entitled to consideration when deliberately given, especially when adhered to consistently for a considerable period of time. Elmen v. State Board of Equalization & Assessment, *supra*. But in either event such would not be controlling if the act contravenes some provision of the Constitution.

The language employed in the statute here involved is plain and we must construe it accordingly. No rules of construction are necessary for that purpose.

The resolution passed by the district's board of directors met the requirements thereof. That leaves the only question remaining, did the Legislature act within its authority in dealing with the matters involved?

In this respect the following has application: "Every legislative act comes before this court surrounded with the presumption of constitutionality and this presumption continues until the act under review clearly appears to contravene some provision of the Constitution." Weekes v. Rumbaugh, 144 Neb. 103, 12 N. W. 2d 636, 150 A. L. R. 129. See, also, Clough v. North Central Gas Co., 150 Neb. 418, 34 N. W. 2d 862; State ex rel. State Railway Commission v. Ramsey, 151 Neb. 333, 37 N. W. 2d 502.

Further, it should be understood that: "The constitutional validity of an act of the legislature is to be tested and determined, not by what has been or possibly may be done under it, but by what the law authorizes to be done under and by virtue of its provisions." City of Beatrice v. Wright, 72 Neb. 689, 101 N. W. 1039.

Also, the Legislature cannot do indirectly what the Constitution prohibits it from doing directly. Peterson v. Hancock, 155 Neb. 801, 54 N. W. 2d 85.

Bearing in mind the foregoing principles we turn next to the question of the constitutionality of sections 14-1106 and 14-1107, R. R. S. 1943.

We do not think the factual situation here presented involves a subscription to stock, or becoming the owner of any capital stock of a railroad, private corporation, or association by a city, county, town, precinct, municipality, or other subdivision of the state as prohibited by Article XI, section 1, of the Constitution of Nebraska.

We do not think the factual situation here presented can in any way be said to relate to Article XIII, section 2, of the Constitution of Nebraska, which, as far as here material, provides: "No city, county, town, precinct, municipality, or other subdivision of the state, shall ever make donations to any railroad, or other works of internal improvement, * * *."

Article I, section 10, of the Constitution of the United States provides: "No State shall * * * pass any * * * Law impairing the Obligation of Contracts, * * *."

Article I, section 16, of the Constitution of Nebraska likewise provides: "No * * * law impairing the obligation of contracts, * * * shall be passed."

As between the district and the state we have, as early as Regents v. McConnell, *supra,* said: "Hence it is very clear that the rights and franchises of such public corporations never become vested rights as against the state, and its charter constitutes no contract in the sense of the constitutional provision which prohibits the obligation of contracts being violated."

All the outstanding obligations of the district, which are revenue bonds, were issued pursuant to and under the authority of Resolution No. 19 passed by the board of directors. It provides that operating expenses are to be paid only after all debt requirements have been met. The plan provided for securing the payment of these revenue bonds is as follows: All money received by the district is put in a "Revenue Fund"; from this fund sufficient is then deposited in the "Debt Service Fund" for payment of its indebtedness requirements in an amount adequate to cover the specific items therein set forth; and it is only after the foregoing provisions have been met that the funds remaining in the "Revenue Fund" may be withdrawn therefrom and used for general purposes, including operating expenses. It is thus clearly evident that the authorization made in sections 14-1106 and 14-1107, R. R. S. 1943, could in no possible way impair the outstanding obligations of the district.

Article XIII, section 3, of the Constitution of Nebraska, provides: "The credit of the state shall never be given or loaned in aid of any individual, association, or corporation."

In State ex rel. Haberlan v. Love, 89 Neb. 149, 131 N. W. 196, 34 L. R. A. N. S. 607, Ann. Cas. 1912C 542, we said of this section: "Section 3, art. XII (now XIII) of the constitution, was intended to prevent the state from extending its credit to private enterprises."

Also in Oxnard Beet Sugar Co. v. State, on rehearing,

73 Neb. 66, 105 N. W. 716, we said: "The legislature cannot appropriate the public moneys of the state to encourage private enterprises."

But, as stated in City of Glendale v. White, 67 Ariz. 231, 194 P. 2d 435: "No hard and fast rule can be laid down, for in determining whether a proposed expenditure of public funds is valid as devoted to a 'public use or purpose' each case must be decided with reference to the object sought to be accomplished and to the degree and manner in which that object affects the public welfare. Opinion of the Justices, 320 Mass. 773, 67 N. E. 2d 588, 165 A. L. R. 807.".

As stated in Oxnard Beet Sugar Co. v. State, *supra*: "It is the province of the legislature to determine matters of policy. In appropriating the public funds, if there is reason for doubt or argument as to whether the purpose for which the appropriation is made is a public or a private purpose, and reasonable men might differ in regard to it; it is generally held that the matter is for the legislature; * * *." See, also, Power Oil Co. v. Cochran, 138 Neb. 827, 295 N. W. 805; State ex rel. Douglas County v. Cornell, 53 Neb. 556, 74 N. W. 59, 68 Am. S. R. 629, 39 L. R. A. 513; State ex rel. Custer County Agricultural Society & Live Stock Exchange v. Robinson, 35 Neb. 401, 53 N. W. 213, 17 L. R. A. 383.

The nature of appellee and the purposes it serves has already been set forth herein. That these are for the welfare of the public and that they serve a public purpose there can be no doubt. See, Hager v. Kentucky Children's Home Soc., 119 Ky. 235, 83 S. W. 605, 67 L. R. A. 815; Myer v. Children's Aid Assn., 73 Ind. App. 489, 127 N. E. 835; Furlong v. South Park Com'rs., 340 Ill. 363, 172 N. E. 757; Power Oil Co. v. Cochran, *supra*. In exercising the authority we think the following has application: " 'These authorities clearly settle that the vital point in all such appropriations is whether the purpose is public; and that, if it is, it does not matter whether the agency through which it is dispensed is

public or not; that the appropriation is not made for the agency, but for the object which it serves; the test is in the end, not in the means.' (Hager v. Home Society, 119 Ky. 235, 83 S. W. 605, 67 L. R. A. 815.)" Myer v. Children's Aid Assn., *supra*. See, also, Furlong v. South Park Com'rs., *supra*; Bullock v. Billheimer, 175 Ind. 428, 94 N. E. 763; Sambor v. Hadley, 291 Pa. 395, 140 A. 347; Long v. Mayo, 271 Ky. 192, 111 S. W. 2d 633.

We think the Legislature was not, by this section, prohibited from authorizing the use of the district's funds for a public purpose beneficial to it but in delegating such authority, which is to authorize the "use of its funds for charitable or eleemosynary purposes," it must set up reasonable standards to guide the agency which is to administer it. Schutte v. Schmitt, *ante* p. 162, 75 N. W. 2d 656. This we think it did by the following requirements therein set forth: "* * * the governing body of such public corporation or political subdivision shall before making such contribution find and determine by the vote of two-thirds of all its members that to make such contribution will protect and increase the safety of its property and promote the health and welfare of its employees and enable them to render more efficient service to such public corporation or political subdivision and enable it to better discharge its duties to the public; and provided further, that the association or corporation to which such contributions are made shall so operate that the funds contributed shall be used within the limits of the city of the metropolitan class for the purposes set forth in this act. Such contributions shall not in any one year be in excess of one half of one per cent of the annual gross receipts of such public corporation or political subdivision in that year, which shall be computed on the basis of the receipts derived within the corporate limits of such metropolitan city." § 14-1107, R. R. S. 1943.

Article III, section 18, of the Constitution of Nebraska, provides: "The Legislature shall not pass local or special laws in any of the following cases, that is to say:

\* \* \* Granting to any corporation, association, or individual any special or exclusive privileges, immunity, or franchise whatever. In all other cases where a general law can be made applicable, no special law shall be enacted."

"The power of classification rests with the legislature, and this power cannot be interfered with by the courts, unless it is clearly apparent that the legislature has by an artificial and baseless classification attempted to avoid and violate the provisions of the constitution prohibiting local and special legislation." Allan v. Kennard, 81 Neb. 289, 116 N. W. 63. See, also, State ex rel. Cone v. Bauman, 120 Neb. 77, 231 N. W. 693.

"The rule established by the authorities is that while it is competent for the legislature to classify, the classification, to be valid, must rest on some reason of public policy, some substantial difference of situation or circumstances, that would naturally suggest the justice or expediency of diverse legislation with respect to the objects classified. See Cooley, Constitutional Limitations (5th ed.), 481." State ex rel. Dawson County v. Farmers & Merchants Irr. Co., 59 Neb. 1, 80 N. W. 52.

As recently as Blauvelt v. Beck, *ante* p. 576, 76 N. W. 2d 738, we restated the principle as follows: "The Legislature may make a reasonable classification of persons, corporations, and property for purposes of legislation concerning them, but the classification must rest upon real differences of situation and circumstances surrounding the members of the class, relative to the subject of legislation, which render appropriate its enactment." See, also, Galloway v. Wolfe, 117 Neb. 824, 223 N. W. 1, 62 A. L. R. 637; State ex rel. Cone v. Bauman, *supra*; State ex rel. County of Dawson v. Dawson County Irr. Co., 125 Neb. 836, 252 N. W. 320; Anderson v. Lehmkuhl, 119 Neb. 451, 229 N. W. 773.

We, also, said in State ex rel. Taylor v. Hall, 129 Neb. 669, 262 N. W. 835, that: " 'The legislature may legislate in regard to a class of persons, but they cannot take

what may be termed a natural class of persons, split that class in two, and then arbitrarily designate the dissevered fraction of the original unit as two classes, and enact different rules for the government of each.' State v. Julow, supra (129 Mo. 163, 31 S. W. 781, 50 Am. S. R. 443, 29 L. R. A. 257)."

It will be noted that section 14-1106, R. R. S. 1943, limits the public corporations or political subdivisions in the state that may use their funds for charitable or eleemosynary purposes to those engaged in a business in a proprietary capacity in a city of the metropolitan class and are not supported directly by taxation, and then section 14-1107, R. R. S. 1943, provides such public corporation or political subdivision so engaged may contribute from funds derived from its proprietary activities to any association or corporation, such as appellee, operating therein provided the governing body of such public corporation or political subdivision shall find certain things to exist. Among these are that it will protect and increase the safety of its property; that it will promote the health and welfare of its employees; that it will help its employees and enable them to render more efficient service; and that it will enable the district to better discharge its duties to the public.

We can see no real difference in the circumstances surrounding the employees of such public corporations whether in a metropolitan city or outside thereof, nor can we see any real difference in the health and welfare benefits that will be received from such donations by the public in a city of the metropolitan class and those that would be received by the public who live in the smaller communities and cities of the state which may be included in the area served. The latter would be true not only generally over the state but even within the very district herein involved. We think the Legislature had authority to deal with the subject but having entered the field could not arbitrarily classify the districts, or within a district, by limiting the right of such

public corporation to use its revenues for such purposes only in Omaha, a city of the metropolitan class, or the district serving it. The public good which the Legislature intended, and which it thought the money so authorized to be expended would serve, is applicable to the employees of all public power districts so operating. We think if such contributions are to be authorized no reasonable basis exists for the classification here made, which is, "For the purpose of promoting and aiding in the health and welfare of any city of the metropolitan class in which it may be operating, * * *." § 14-1106, R. R. S. 1943.

Two other sections of the state Constitution are called to our attention. They are Article I, section 4, which provides that: "No person shall be compelled to * * * support any place of worship against his consent, * * *:" and Article VII, section 11, which provides: "Neither the state Legislature nor any county, city or other public corporation, shall ever make any appropriation from any public fund, or grant any public land in aid of any sectarian or denominational school or college, or any educational institution which is not exclusively owned and controlled by the state or a governmental subdivision thereof."

In this respect the following principle should be borne in mind: "Neither may the legislature circumvent an express provision of the Constitution by doing indirectly what it may not do directly." Steinacher v. Swanson, 131 Neb. 439, 268 N. W. 317.

There are as evidenced here, agencies which, as part of their work, engage in both religious and charitable activities. Y.M.C.A. of Omaha v. Douglas County, 60 Neb. 642, 83 N. W. 924, 52 L. R. A. 123; Wright v. Salvation Army, 125 Neb. 216, 249 N. W. 549; Ancient and Accepted Scottish Rite of Freemasonry v. Board of County Commissioners, 122 Neb. 586, 241 N. W. 93, 81 A. L. R. 1166. If by giving to agencies of this character, even though the money given is designated to be used for

activities non-sectarian in character, it makes available to such agency for religious or educational purposes money it has on hand to an extent not otherwise possible, thus indirectly doing what the Constitution prohibits, we think it would be bad. Any legislation passed dealing with this subject and delegating such authority to some agency must properly restrict that agency to the same extent as the Legislature itself is restricted in order to prevent such agency from doing what the Legislature itself could not do. As we have already stated in Steinacher v. Swanson, *supra*: "* * * it is not what has been done but what can be done under a statute that determines its constitutionality."

"An unconstitutional act is not a law; it confers no rights; it imposes no duties; it affords no protection; it creates no office; and it is, in legal contemplation, as inoperative as though it had never been passed." Board of Educational Lands & Funds v. Gillett, 158 Neb. 558, 64 N. W. 2d 105.

The brief of amici curiae, filed in behalf of the Omaha Industrial Foundation, does not present an identical situation with that involved herein. Consequently we do not find it either necessary or desirable to determine the question as to whether or not the contributions made to it were within the general powers of the public corporation making them.

Having come to the conclusion that without express statutory authority authorizing it to do so that the district was without legal authority to make the contributions it did to appellee in 1950 and 1951 and further, because we find the act passed by the 1951 Legislature relating to the 1952, 1953, and 1954 pledges to be unconstitutional, we reverse the decision of the trial court and remand the action to it with the following directions: First, that the bank be directed to refund to the district the amount of the 1950 and 1951 contributions as is provided for in the indemnifying agreement which it entered into with appellee and the district; and second,

that the appellee be denied a recovery on the district's 1952, 1953, and 1954 pledges.   Costs are taxed to the appellee.

REVERSED AND REMANDED WITH DIRECTIONS.