### 19509

William S. DURHAM, Jr., for himself and all Other Taxpayers of the State of South Carolina, Appellants, v. Daniel R. McLEOD as Attorney General of the State of South Carolina et al., Respondents.

(192 S. E. (2d) 202)

*Charles W. Knowlton, Esq.,* of *Boyd, Bruton, Knowlton, Tate & Finlay,* Columbia, *for the Appellant*

*Messrs. Timothy G. Quinn, Asst. Atty. Gen.* and *O. Wayne Corley,* of Columbia, and *Theodore B. Guerard,* of Charleston, *for Respondents,*

October 26, 1972.

*Per Curiam:*

In this action for declaratory judgment, the plaintiff tax-payer challenges the constitutionality of the State Education Assistance Act, Act No. 433 of the Acts of 1971. The Act constitutes the State Budget and Control Board as the State Education Assistance Authority and authorizes it to make, insure or guarantee loans to students to defray their expenses at any institution of higher learning. The Authority is authorized to issue bonds which shall be payable solely from repayment of student loans, grants to the Authority, including any from Federal sources, and any revenues earned by the Authority. The bonds shall not constitute a debt of the State or any political subdivision. All money received by the Authority shall be trust funds to be held and applied solely toward carrying out the purposes of the Act. Borrowers must be residents of South Carolina, but may attend any eligible institution whether located here or in some other state. No restriction is placed upon the course of study undertaken by a borrower.

Plaintiff first alleges that the Act violates Article XI, Section 9 of the Constitution of South Carolina, which prohibits the use of the "property or credit" of the State, "directly or indirectly" in aid of any church controlled college or school.

In *Hartness v. Patterson,* 255 S. C. 503, 179 S. E. (2d) 907 (1971), we held that tuition grants to students attending independent institutions of higher learning amounted to aid to these institutions in violation of the section here relied upon. But the clear purpose of that Act was to aid "independent institutions of higher learning" as defined, of which sixteen out of a total of twenty-one which qualified

were church supported. The direct tuition grants were, of course, of public money, and our conclusion that the Act violated Article XI, Section 9 was inevitable.

In this case, the emphasis is on aid to the student rather than to any institution or class of institutions. All which provide higher education, whether public or private, sectarian or secular, are eligible. The loan is to the student, and all eligible institutions are as free to compete for his attendance as though it had been made by a commercial bank. This is aid, direct or indirect to higher education, but not to any institution or group of institutions. Even if it were conceded that the loan fund is public money within the meaning of Article XI, Section 9, it would require a strained construction to hold that participation by students attending Wofford, Furman, and like institutions, as well as by those attending the University of South Carolina, Clemson University and the like, offends this constitutional restriction. However, we think it clear that the student loan fund under the Act is held by the Authority as a trust fund, and that no public money or credit, within the meaning of Article XI, Section 9, is employed in making or guaranteeing loans. *Cf. Elliott v. McNair*, 250 S. C. 75, 90, 156 S. E. (2d) 421, 429 (1967).

> The complaint next alleges that the Act violates the establishment clauses of the Constitution of South Carolina and that of the United States.

We find no merit in this claim. The Act is scrupulously neutral as between religion and irreligion and as between various religions. It simply aids and encourages South Carolina residents in the pursuit of higher education, and leaves all eligible institutions free to compete for their attendance and dollars, neither advantaged or disadvantaged by the operation of the Act. If, on the other hand, sectarian schools had been excluded from the category of eligible institutions, such schools would have been materially disadvantaged by the intervention of the State's loan program.

414

We follow plaintiff's brief in quoting the applicable criteria from *Lemon v. Kurtzman*, 403 U. S. 602, 91 S. Ct. 2105, 29 L. Ed. (2d) 745 (1971):

"Every analysis in this area must begin with consideration of the cumulative criteria developed by the Court over many years. Three such tests may be gleaned from our cases. First, the statute must have a secular legislative purpose; second, its principal or primary effect must be one that neither advances nor inhibits religion, *Board of Education [of Central School District No. 1] v. Allen,* 392 U. S. 236, 243, 88 S. Ct. 1923, 1926, 20 L. Ed. (2d) 1060 (1968); finally, the statute must not foster 'an excessive government entanglement with religion.' . . ." 403 U. S. at 612-613, 91 S. Ct. at 2111.

Plaintiff concedes the Act's compliance with the first and third criteria. What has already been said sufficiently demonstrates its compliance with the second.

The remaining grounds of challenge to the Act are (1) that it improperly authorizes the use of public funds for private purposes; (2) that it improperly authorizes the use of public funds for the benefit of out-of-state institutions; and (3) that it deprives plaintiff of due process and equal protection of the laws. All of these objections are met when we recognize, as we must, that the Act rests upon a valid public purpose, *i. e.,* the promotion of higher education in the State; and that all of its provisions are reasonably related to this purpose.

Affirmed.