### 19186

George B. HARTNESS, for himself and all other resident taxpayers of the State of South Carolina, Appellant, v. Grady L. PATTERSON, Jr., as State Treasurer for the State of South Carolina, et al., Respondents.

(179 S. E. (2d) 907)

*Augustus T. Graydon, Esq., Graydon & Suber,* of Columbia, *for Appellant,*

*Messrs. Daniel R. McLeod, Atty. Gen., Michael W. Tighe, Asst. Atty. Gen.,* of Columbia, and *Thomas H. Pope,* of Newberry, *for Respondents,*

March 10, 1971.

Lewis, Justice:

At issue is the constitutionality of Act No. 1191 of the 1970 Acts of the General Assembly, 56 Stat. 2579, under which the State makes public funds available to provide financial aid for students attending independent institutions of higher learning. This appeal is from an order of the lower court upholding the constitutionality of the Act.

The title of the Act in question states that it is one "to provide tuition grants to students attending independent institutions of higher learning." The act creates a committee to administer the tuition grants; sets forth the eligibility requirements for students to receive aid; makes unavailable a tuition grant to any student "enrolled in a course of study leading to a degree in theology, divinity, or religious education"; and sets forth the standards to be met by any participating independent institution of higher learning. An appro-

priation of $5,000.00 was made for the year 1970-71 to provide tuition grants authorized under the Act.

It is conceded that there are twenty-one schools in South Carolina which meet the statutory definition of an "independent institution of higher learning." Of these, at least sixteen are operated under the direction or control of religious groups or denominations. The remaining schools are privately owned and are not controlled in any manner by any religious or sectarian group.

While the constitutionality of the Act is attacked upon several grounds, in view of the statements in the briefs of the questions involved and the conclusions which we have reached, we need only determine whether the tuition grants to students attending institutions, controlled by religious or sectarian organizations constitute the use of public funds to aid such institutions, in violation of Article XI, Section 9, of the South Carolina Constitution.

The pertinent portions of Article XI, Section 9, are as follows:

"The property or credit of the State of South Carolina, * * *, or any public money, from whatever source derived, shall not, by gift, donation, loan, contract, appropriation, or otherwise, be used, directly or indirectly, in aid or maintenance of any college, school, hospital, orphan house, or other institution, society or organization, of whatever kind, which is wholly or in part under the direction or control of any church or of any religious or sectarian denomination, society or organization."

Admittedly, the foregoing constitutional provision prohibits the use of public money, directly or indirectly, in aid of the sixteen institutions of higher learning controlled by sectarian groups. The aid does not have to be direct but is prohibited if it *indirectly* benefits the religious schools.

Article XI, Section 9, does not attempt to distinguish between aid which is designed primarily to benefit the reli-

gious function of a school and that which is intended to benefit the school in other capacities. This was no doubt in recognition of the evident fact that, if the use of public funds aids the institution, it necessarily aids its religious function in some degree. The degree of aid is immaterial. If the use of the public funds aids the religious institution, it is prohibited.

Under the terms of the Act, the tuition grant is made available to the student only after he has been accepted by or is registered in the particular eligible institution of his choice. After the tuition grant has been made, it is unlawful for the student to expend the funds for any purpose other than in payment of his tuition at the institution he is authorized to attend under the tuition grant. It is conceded that the tuition grant is not made directly to the school, but is made to the student who is required to pay it to the school selected by him. The funds are paid to the student only as a member of the selected school.

The close tie of the participating schools to the tuition grant is further demonstrated by the administrative control provided by the Act. The administration of the tuition grants is placed in a committee consisting of eight representatives of the participating institutions, plus two *ex officio* members from the General Assembly, with the power to make rules and regulations within the terms of the Act. The method of appointment of the members of the committee from the institutions is not stated. However, since sixteen of the twenty-one eligible schools are religious schools, quite conceivably all, and most likely a majority, of the committee controlling the administration of the Act would come from schools controlled by the religious groups.

We reject the argument that the tuition grants provided under the Act do not constitute aid to the participating schools. Students must pay tuition fees to attend institutions of higher learning and the institutions depend upon the payment of such fees to aid in financing their operations. While it is true that the tuition grant aids the student, it is also

of material aid to the institution to which it is paid. The fact that only a portion of the tuition costs are covered by the grants from the State affects the matter only in degree. If State funds can be used to provide a portion of the tuition costs for attendance at religious schools, all could just as legally be paid, resulting in the support of such institutions entirely with State funds.

The record, in our opinion, demonstrates that the tuition grants were also intended as aid to the institution. The Stipulation of Facts shows that the private colleges have space available for approximately 5313 additional students without increasing existing facilities or additional capital outlays. It is apparent that one of the main purposes of the tuition grant is to reduce the cost to a student for attending the private colleges and thereby attract additional students to their campuses so as to fill the vacancies in their student body. Such would have the effect of adding additional funds to their treasuries and thereby improve their financial status. It is perhaps better stated in respondent's brief as follows: "The indirect benefit accruing to the private colleges will consist of their being able to attract sufficient students to their campuses to continue to function." Such constitutes aid to the religious schools.

We therefore hold that the use of public funds under the Act to provide tuition grants to students attending the participating religious institutions constitutes aid to such institutions within the meaning of, and prohibited by, Article XI, Section 9, of the Constitution of South Carolina.

The judgment of the lower court is accordingly reversed, and respondents are permanently restrained from expending public funds under the Act in question for tuition grants to students attending any college or other institution which is wholly or in part under the direction or control of any church or of any religious or sectarian denomination, society or organization.

Moss, C. J., and Bussey, Brailsford, and Littlejohn, JJ., concur.