JAY A. LENSTROM ET AL., APPELLANTS, V.
CHARLES THONE, GOVERNOR, ET AL., APPELLEES.

311 N.W.2d 884

Filed October 30, 1981. No. 43481.

Kermit A. Brashear II and Pamela K. Black of Nelson & Harding for appellants.

Paul L. Douglas, Attorney General, and Harold Mosher for appellees.

James W. R. Brown of Fitzgerald, Brown, Leahy, Strom, Schorr & Barmettler, amicus curiae.

Heard before KRIVOSHA, C.J., BOSLAUGH, McCOWN, CLINTON, BRODKEY, WHITE, and HASTINGS, JJ.

CLINTON, J.

This is an action commenced in the District Court for Lancaster County, praying for a declaratory judgment determining the constitutionality of 1978 Neb. Laws, L.B. 743, codified as Neb. Rev. Stat. §§ 85-980 to 85-9,102, inclusive (Cum. Supp. 1980). L.B. 743, commonly referred to as the Scholarship Award Program (hereinafter the Act), provides for a financial assistance program to "enable eligible undergraduate Nebraska residents to receive educational services in an eligible postsecondary educational institution of this state," § 85-981, all as defined by the Act.

The Act is administered by the Nebraska Coordinating Commission for Postsecondary Education. § 85-983. An award is a grant of money by the commission to an eligible student for educational expenses. § 85-992. Section 85-994 prescribes the conditions which attached to an award and eligibility requirements needed to attain an award. These include: (1) Direct distribution of the award to the student; (2) Enrollment in an eligible institution and maintenance of a minimal standard of performance; (3) The maximum amount of the award; "(4) The award is given on the basis of substantial financial need"; (5) The period covered by the award; (6) An agreement that the award be used only for educational expenses; "(7) The individual is not pursuing a course of study which is pervasively sectarian and creditable toward a theological or divinity degree"; and (8) Compliance with rules and regulations of the commission.

Eligible postsecondary educational institutions include both public and private institutions which are: "(1) Located in Nebraska;

"(2) Primarily engaged in instruction of students;

"(3) Satisfying the provisions of Nebraska law re-

lating to the approval, licensure, and accreditation of schools, colleges, and universities; and

"(4) Offering courses of instruction in regularly scheduled classes to regularly enrolled undergraduate students who reside in Nebraska and have received high school diplomas or their equivalent." § 85-984.

The petition alleges facts indicating the plaintiffs are persons eligible for the program. The defendants are the members of the Nebraska Coordinating Commission for Postsecondary Education. Also joined as defendants are the Governor, the Attorney General, the State Treasurer, and the State Auditor. The petition alleges the defendant Attorney General has rendered an opinion stating the Act is unconstitutional and, for that reason, the defendants have refused to implement the program as provided for by the Legislature. As such, the plaintiffs have been deprived of their opportunity to participate in the award program.

The defendants filed a demurrer to the plaintiffs' petition. The District Court sustained the demurrer, finding the Act, on its face, violated the portion of Neb. Const. art. VII, § 11, which provides: "Notwithstanding any other provision in the Constitution, appropriation of public funds shall not be made to any school or institution of learning not owned or exclusively controlled by the state or a political subdivision thereof . . . ." The petition was dismissed by the District Court, and the plaintiffs have appealed to this court.

The defendants contend the statute is unconstitutional because it attempts to appropriate public funds in support of educational institutions not owned or exclusively controlled by the state, and because it attempts to extend the credit of the state to private individuals, that is, the students who would be the beneficiaries of the program.

The contention of the defendants with reference to article VII, § 11, may be summarized as follows: The scholarship program may inure to the benefit of private

postsecondary educational institutions because recipients may or will use some of the awards to pay tuition and fees and this constitutes a benefit to the institutions prohibited by article VII, § 11. They state the issues presented in this case are controlled by the prior opinions of this court in *State ex rel. Rogers v. Swanson*, 192 Neb. 125, 219 N.W.2d 726 (1974), and *Gaffney v. State Department of Education*, 192 Neb. 358, 220 N.W.2d 550 (1974).

They recognize the language of article VII, § 11, was amended by the voters in 1972, but assert the change made no substantive difference in the meaning of the section. Prior to the 1972 amendment the Constitution prohibited the appropriation of public funds "in aid of any sectarian or denominational school or college, or any educational institution which is not exclusively owned and controlled by the state or a governmental subdivision thereof." In 1972 this provision was amended to read: "Appropriation of public funds shall not be made *to* any school or institution of learning not owned or exclusively controlled by the state or a political subdivision thereof." (Emphasis supplied.)

We will first discuss the proposition that the result in this case is controlled by our opinions in *State ex rel. Rogers v. Swanson, supra,* and *Gaffney v. State Department of Education, supra. Rogers* involved an act of the Legislature which provided for tuition grants to students attending private colleges only, and was enacted prior to the 1972 amendment to article VII, § 11. With reference to the language change in the constitutional amendment, the court said in *Rogers* the amendment did not affect the question involved because an act of the Legislature, unconstitutional when enacted, is null and void from its inception and, therefore, is not validated by a subsequent amendment to the Constitution authorizing its passage. We, in that case, expressly refrained from expressing an opinion on the effect of the constitutional change.

The opinion, however, noted the trial judge had found the purpose of the act was to aid private colleges and not to enable students to attend colleges of their choice. We sustained that finding. In that case we relied upon, among others, the precedent of *Hartness v. Patterson*, 255 S.C. 503, 179 S.E.2d 907 (1971). In *Hartness* the Supreme Court of South Carolina applied a provision of the South Carolina Constitution which prohibited the use of the property or credit of the state "directly or indirectly" in aid of any church-controlled college and held that the clear purpose of the scholarship act was to aid "independent institutions of higher learning." The South Carolina court held the act unconstitutional.

*Gaffney, supra,* involved an act of our Legislature which provided for the loan of secular textbooks to children enrolled in private elementary schools. This statute, too, was enacted before the 1972 amendment to our Constitution. We held the act unconstitutional. The case was decided upon the basis of the constitutional provision as it existed at the time the statute was enacted. It is apparent in the two cases mentioned we did not decide the effect of the 1972 amendment.

The literal language of the amendment prohibits "appropriation . . . to" any school not owned by the state. The defendants assert this language has a broader meaning than its literal language imports. They would urge the Constitution prohibits any use of public funds which might either directly or indirectly aid a private school and that the 1972 amendment did not change the prior prohibition in any way. In supporting this argument, they point to the language in A Summary of Constitutional Amendments Proposed by the Nebraska Legislature (Neb. Legislative Council, March 1972). "The adoption of this proposed amendment would retain the above-mentioned prohibitions against sectarian instruction in public schools, the appropriation of public funds to any non-public school, and the requirement of any religious tests or quali-

fications for public school teachers or pupils, although these provisions would be re-worded somewhat. The meanings would remain the same." *Id.* at 28.

Even if that statement was deemed in any way "interpretive" of the provision, the plain language of the 1972 amendment does not support the defendants' contention. The statement of the Nebraska Legislative Council, simply put, is that the 1972 amendment retained the prohibition against "the appropriation of public funds to any nonpublic school," and that "the meanings would remain the same." The statement's effect is only that the prohibition against the appropriation of "public funds to any nonpublic school" would remain. That is what the Constitution says.

Defendants also argue the failure to enact a rather confusing constitutional amendment in 1976 somehow affects the meaning of the constitutional provisions adopted in 1920 and 1972. We know of no legal basis for such a contention. Even if the voters in 1976 expressed disapproval of a proposed amendment, such disapproval does not affect a change in constitutional interpretation.

In *Gaffney v. State Department of Education,* 192 Neb. 358, 362, 220 N.W.2d 550, 553 (1974), while discussing the previous language of the article in question, we said: "It [article VII, § 11] says what it means and means what it says." We think that the same statement must be applied to the language as changed. The effect of the literal language of the amendment is to prohibit appropriations made "to" a nonpublic school.

The holding of the Supreme Court of South Carolina in *Hartness v. Patterson,* 255 S.C. 503, 179 S.E.2d 907 (1971), upon which we relied heavily in *State ex rel. Rogers v. Swanson,* 192 Neb. 125, 219 N.W.2d 726 (1974), has no application under the present constitutional language when applied to the statutory plan before us in this case. In the case of *Americans*

*United v. Rogers,* 538 S.W.2d 711 (Mo. 1976), the Supreme Court of Missouri said a tuition grant program to students of both public and private colleges, much like the one before us, did not offend various provisions of the Missouri Constitution, viz, prohibitions against use of public funds for a nonpublic purpose and use of public money directly or indirectly in aid of any denomination or religion. Under slightly different constitutional provisions the Alabama Supreme Court held similarly in *Ala. Ed. Ass'n v. James,* 373 So. 2d 1076 (Ala. 1979).

Certain fundamental constitutional principles must guide, and always have guided, us when the constitutional bounds of legislative power are questioned. The first principle is the Legislature has plenary legislative authority limited only by the state and federal Constitutions. *Swanson v. State,* 132 Neb. 82, 271 N.W. 264 (1937); *Dwyer v. Omaha-Douglas Public Building Commission,* 188 Neb. 30, 195 N.W.2d 236 (1972); *Orleans Education Assn. v. School Dist. of Orleans,* 193 Neb. 675, 229 N.W.2d 172 (1975). The Nebraska Constitution is not a grant but, rather, a restriction on legislative power, and the Legislature may legislate on any subject not inhibited by the Constitution. *State ex rel. Meyer v. County of Lancaster,* 173 Neb. 195, 113 N.W.2d 63 (1962). The state Constitution is not a grant but a restriction of legislative power. Consequently, courts can enforce only those limitations which the Constitution imposes. *United Community Services v. The Omaha Nat. Bank,* 162 Neb. 786, 77 N.W.2d 576 (1956). Unless restricted by some provision of the state or federal Constitution, the Legislature may enact laws and appropriate funds for the accomplishment of any public purpose. It is for the Legislature to decide in the first instance what is and what is not a public purpose, but its determination is not conclusive on the courts. However, to justify a court in declaring a statute invalid because its object is not a public purpose, the absence of public

purpose must be so clear and palpable as to be immediately perceptible to the reasonable mind. *Chase v. County of Douglas*, 195 Neb. 838, 241 N.W.2d 334 (1976). Implied restrictions on the legislative power are not to be inferred unless the restriction is one that is clearly implied. *State ex rel. Meyer v. County of Lancaster, supra.* Legislation which serves a public purpose is not constitutionally impermissible because incidental benefits may accrue to others. *Chase v. County of Douglas, supra; Cosentino v. City of Omaha*, 186 Neb. 407, 183 N.W.2d 475 (1971); *State ex rel. School Dist. of Hartington v. State Board of Education*, 188 Neb. 1, 195 N.W.2d 161 (1972). A duly enacted statute is presumed constitutional and may not be invalidated by the court unless clearly in contravention of a provision of fundamental law or of public policy. *United Community Services v. The Omaha Nat. Bank, supra; Prendergast v. Nelson*, 199 Neb. 97, 256 N.W.2d 657 (1977).

In enacting the scholarship program, the Legislature made certain factfindings which they set forth in § 85-980. These were:

"(1) The provision of a higher education for all residents of this state who desire and are properly qualified for such an education is important to the welfare and security of this state and nation and consequently is an important public purpose;

"(2) Many qualified students are deterred by financial consideration from completing their education, with a consequent irreparable loss to this state and nation of talents vital to welfare and security;

"(3) The state can enhance its economic and social potential when the state's residents have the opportunity to contribute to the full extent of their capabilities through the removal of the financial barriers to their economic, social, and educational goals;

"(4) The state can enhance its educational objectives by the development of financial aid programs, including programs which enable the state to fully

qualify for federal student aid funds made available to the state through the Federal SSIG program under authority of Section 415 of the Higher Education Act of 1965, as amended, and related acts; and

"(5) To avoid the application of a double standard in carrying out its educational programs, the state needs to make certain that all students who qualify for aid stand equal to each other before the law, and that they be given the freedom, within reasonable and constitutional limits, to select the institutions of their choice in which to pursue their educational goals."

In the absence of some plain restriction in the Constitution, it is not for this court to say the scholarship awards for needy students, paid directly to the student, which may be used at any eligible institution, private or public, as defined by the Act, and which may not be used for pursuing courses of study which are pervasively sectarian and creditable toward a theological or divinity degree, do not serve a public purpose. Nor is it for this court to say the Legislature is not justified in making the finding a public purpose, which it did in this case.

The defendants also contend that the Act is unconstitutional because it violates Neb. Const. art. XIII, § 3, which provides: "The credit of the state shall never be given or loaned in aid of any individual, association, or corporation . . . ." They cite no authority, but argue it violates this article because it is a "gift." We think this position misconceives the true issue. We have said the purpose of the section is to prevent the state (or any subdivision thereof) from extending its credit to private enterprise. *United Community Services v. The Omaha Nat. Bank, supra.* See *Chase v. County of Douglas, supra.* In the first case cited, the question was whether public utilities districts could make contributions to the united fund. We there held the making of the gifts was a public purpose and did not violate article XIII, § 3, but did violate article VII, § 11, as it then existed. The question is whether the

Act serves a public purpose. We have already held that it does.

If article XIII, § 3, were extended to include "gifts" for public purposes, then all state welfare programs and many others would be unconstitutional. We find no authority which supports the defendants' position with reference to article XIII, § 3.

The holding of the District Court is reversed.

REVERSED.