REQUESTED BY: Senator Bill Harris District #27 Room 1008, State Capitol Lincoln, NE 68509
Dear Senator Harris:
On November 9, 1983 you directed two inquiries to Mr. Paul Douglas, Attorney General of Nebraska, concerning matters related to Commonwealth Savings Co. of Lincoln, and potential legislation to assist its depositors. Your correspondence has been referred to me, in my capacity as Special Assistant Attorney General, for response. In accordance with guidelines established by Mr. Douglas and myself in connection with the discharge of my duties, I must inform you that the opinions expressed in this correspondence are exclusively mine. This correspondence does not, in any manner, reflect the opinion of Mr. Paul Douglas, Attorney General, or any of his assistants.
Inquiries Presented.
The two questions which you have posed are:
 1. May the State of Nebraska, by legislative action, appropriate State funds to the Nebraska Depository Insurance Guaranty Corporation for the benefit of depositors of Commonwealth Savings Co., to enable the NDIGC to pay claims of Commonwealth Savings Co. depositors in amounts which do not exceed $30,000.00 per account?
 2. Does the Nebraska Constitution prohibit the Legislature from approving miscellaneous claims presented against the State from Commonwealth Savings Co. depositors, which claims assert liability against the State of Nebraska by reason of estoppel or any other legal theory which asserts that depositors of Commonwealth Savings Co. have detrimentally relied upon the ostensible assurance that their deposits were insured to $30,000.00?
My responses follow.
I. By virtue of Neb. Const. Art. XIII, Sec. 3, theNebraska Legislature may not extend the Credit of the Statein aid of any individual, association or corporation, includingdepositors of Commonwealth Savings Co., or theNDIGC.
Certain fundamental constitutional principals must be observed in any review of the bounds of legislative authority to control the treasury of Nebraska. Succinctly:
 "The first principal is the Legislature has plenary legislative authority limited only by the State and Federal Constitutions. Swanson v. State, 132 Neb. 82, 271 N.W. 264, (1937); Dwyer v. Omaha-Douglas Public Building Commission, 188 Neb. 30, 195 N.W.2d 236 (1972); Orleans Education Assn. v. School Dist. of Orleans, 193 Neb. 675, 229 N.W.2d 172 (1975). The Nebraska Constitution is not a grant but, rather, a restriction on legislative power, and the Legislature may legislate on any subject not inhibited by the Constitution. State ex rel. Meyer v. County of Lancaster, 173 Neb. 195, 113 N.W.2d 63 (1962). The state Constitution is not a grant but a restriction of legislative power. Consequently, courts can enforce only those limitations which the Constitution imposes. United Community Services v. The Omaha Nat. Bank, 162 Neb. 786, 77 N.W.2d 576 (1956). Unless restricted by some provision of the state or federal Constitution, the Legislature may enact laws and appropriate funds for the accomplishment of any public purpose. It is for the Legislature to decide in the first instance what is and what is not a public purpose, but its determination is not conclusive on the courts. However, to justify a court in declaring a statute invalid because its object is not a public purpose, the absence of public purpose must be so clear and palpable as to be immediately perceptible to the reasonable mind." Lestrom v. Thone, 209 Neb. 783 at 789, 311 N.W.2d 884 (1981).
With respect to the first of the questions noted above, the relationship of Neb. Const. Art. XIII, Sec. 3 to the plenary authority of the Legislature to control the general funds of Nebraska must be inspected. Neb. Const. Art.XIII, Sec. 3 provides:
 "The credit of the state shall never be given or loaned in aid of any individual, association, or corporation, except that the state may guarantee or make long term, low interest loans to Nebraska residents seeking adult or post high school education at any public or private institution in this state. Qualifications for and the repayment of such loans shall be as prescribed by the Legislature. (Amended, 1968.)"
In recent years, substantial litigation has developed concerning the foregoing constitutional provision. InUnited Community Services v. Omaha National Bank, 162 Neb. 787,77 N.W.2d 576 (1956), the Supreme Court was required to resolve litigation brought to determine whether the Omaha Public Power District had legal authority to make pledges to United Community Services, a non-profit charitable organization without capital stock. In passing upon the issue before the Court in 1956, Judge Wenke wrote:
 "In State ex rel. Haberlan v. Love, 89 Neb. 149, 131 N.W. 196, 34 L.R.A.N.S. 607, Ann. Cas. 1912C 542, we said of this section: `Sec. 3, Art. XII (now XIII) of the Constitution, was intended to prevent the State from extending its credit to private enterprises."
 Also in Oxnard Beet Sugar Co. v. State, on rehearing, 73 Neb. 66, 105 N.W. 716, we said: `The Legislature cannot appropriate the public moneys of the State to encourage private enterprises.' 162 Neb. at 799-800.
Clearly, the constitutional mandate of Neb. Const.
Art. XIII, Sec. 3 is to prevent the Legislature from appropriating public moneys of the State to encourage private enterprises, or serve purely private purposes. As the Supreme Court stated in Oxnard Beet Sugar Co. v. State, 73 Neb. 66,105 N.W. 716 (1905), a case in which the Court held that an act providing a state bounty for the manufacture of sugar and chicory was unconstitutional:
 "The Legislature cannot appropriate the public moneys of the State to encourage private enterprises. The manufacturing of sugar and chicory is a private enterprise and the public money or credit cannot be given or loaned in aid of any individual, association, or corporation carrying on such enterprises." 105 N.W. at 717.
Based on the foregoing authorities, it is clear that the appropriation under consideration to NGIDC may be made only if it is for a `public' purpose. However, any appropriation made exclusively for the benefit of Commonwealth Savings Co. depositors is impermissible if, as a result, a `private' purpose is served. What, then, constitutes a `public' or `private' purpose?
In Chase v. County of Douglas, 195 Neb. 838,241 N.W.2d 334 (1976), a taxpayer of the City of Omaha challenged the constitutionality of Neb. Rev. Stat. Sec.18-1401 which authorized City Councils to appropriate `an amount not to exceed 1% of the assessed valuation of the city . . . for the purpose of encouraging immigration, new industries and investment, and to conduct and carry on a publicity campaign'. The Plaintiff attacked the statute as permitting the expenditure of funds for `private purposes'. The Supreme Court rejected the taxpayer's contention and held:
 "The first proposition is that it is for the Legislature to decide in the first instance what is and what is not a public purpose, but its determination is not conclusive on the courts. However, to justify a court in declaring a tax invalid because it is not for a public purpose, the absence of a public purpose must be so clear and palpable as to be immediately perceptible to the reasonable mind. State ex rel. v. Cornell, 53 Neb. 556, 74 N.W. 59. The second proposition is that the general encouragement of growth and industry through such devices as publicity and advertising are public purposes." Id. at 195 Neb. 845-846.
Accord, Lenstrom v. Thone, 209 Neb. 783, 311 N.W.2d 884
(1981); Prendergast v. Nelson, 199 Neb. 97, 256 N.W.2d 657
(1977) (holding that the Nebraska Hospital-Medical Liability Act, Neb. Rev. Stat. Sec. 44-2801 et seq. is constitutional.) See also, State ex rel. Meyer v. Duxbury,183 Neb. 302, 160 N.W.2d 88 (1968).
The appropriation hypothesized in your inquiry would be to the Nebraska Depository Institution Guaranty Corporation, a corporation created pursuant to Neb. Rev. Stat. Sec.21-17,127 et seq., as amended. The NDIGC is, by virtue of the nature of its statutory existence, a private corporation formed, controlled and operated for the benefit of its member institutions. The NDIGC is, of course, a special type of corporation, in that its assessments of members are regulated by statute, and its operating rules, procedures and activities are subject to regulation by the Department of Banking and Finance. Neb. Rev. Stat. Sec. 21-17,132 et seq., as amended. However, in its ultimate essential character, the NDIGC is a private corporation, operated and funded for private purposes, with optional membership.
The hypothesized appropriation to which reference is made in the first section of your letter of November 9, 1983 suggests a legislative appropriation to NDIGC for the exclusive benefit of Commonwealth Savings Co. (`CSC') depositors who relied upon the NDIGC guarantee of $30,000.00 per account. If the appropriation contemplated is made, the singular beneficiaries of the appropriation will be the depositors of CSC who have lost funds up to the $30,000.00 level. There would appear to be no direct or incidental `public' purpose or benefit in any such appropriation.
The appropriation contemplated appears to be decidedly different from the expenditure of public funds for the purpose of attracting industry, creating jobs, encouraging economic growth, welfare and prosperity. This appropriation would appear to have, as its purpose, reimbursement of funds lost in a business venture by CSC depositors who relied upon two private enterprises, CSC and NDIGC, to protect their deposits against loss.
Arguments suggesting ostensible `public' purposes of such an appropriation can certainly be made. However, in the language of the Nebraska Supreme Court in Chase v. DouglasCounty, supra, it is my opinion that the private purpose and character of the contemplated appropriation is so `clear and palpable as to be immediately perceptible to the reasonable mind'. Accordingly, it is my opinion that the appropriation under consideration cannot be made by the Nebraska Legislature without contravening the mandate of Neb.Const. Art. XIII, Sec. 3.
II. The Nebraska Legislature may not approve `MiscellaneousClaims' filed against the State on an estoppel legaltheory by CSC depositors who claim to have relied, to theirdetriment, upon the State of Nebraska for insurance of theiraccounts to the extent of $30,000.00.
There are two general categories of claims which may be filed against the State, i.e. tort claims and miscellaneous claims. The allowance or disallowance of tort claims is governed by a specific statutory procedure. See, Neb. Rev.Stat. Sec. 81-8, 209 et seq. as amended. Miscellaneous claims, on the other hand, may be allowed by legislative action. In allowing a miscellaneous claim, the Legislature may not contravene the mandate of Neb. Const. Art. XIII, Sec. 3; any expenditure made to pay a claim must have a `public' purpose.
For the reasons delineated in Part I of this correspondence, it is my opinion that any allowance of miscellaneous claims for the purpose of paying CSC depositors would be for a private purpose, in contravention of Neb. Const.
Art. XIII, Sec. 3. Unfortunately for the CSC depositors, the State of Nebraska has not actually guaranteed the deposits of any depository institution in this state. Indeed, legislation which would do so might, itself, contravene the constitutional mandate in question.
Rather, the NDIG Act (Neb. Rev. Stat. 21-17,127 et seq., as amended) merely authorized the formation of a corporation by member institutions and created a mechanism for accumulating reserves to be held and administered by the corporation as an insurance fund. The reserves so accumulated are inadequate to cover all potential losses; member institutions may have been permitted nonetheless (if they chose to do so) to project the image of fully insured deposits to the extent of $30,000.00 each.
Nonetheless, assuming that a miscellaneous claim could be appropriately filed by a CSC depositor asserting estoppel theory, it is my opinion that the appropriation of funds for the purpose of allowing the claim would be for a `private' purpose exclusively, and would contravene Neb. Const. Art.XIII, Sec. 3.
Respectfully, David A. Domina Special Assistant Attorney General