REQUESTED BY: Senator John W. DeCamp State Capitol Room 1116 Lincoln, NE 68509
Dear Senator DeCamp:
Your request as to the constitutionality of LB 926 was submitted to us on January 23, 1984, for review in our capacity as Special Assistant Attorney General. In accordance with guidelines established by Mr. Douglas and myself in connection with the discharge of my duties, I must inform you that the opinions expressed in this correspondence are exclusively mine. This correspondence does not, in any manner, reflect the opinion of Mr. Paul Douglas, Attorney General, or any of his assistants.
Section 1 of LB 926 as presented to us for review as to its constitutionality provides that the Department of Banking may formulate a plan designed to protect the assets of an institution under its receivership. The governor may direct deposit funds of the state from the Treasurer's Cash Fund in the institution. This direction shall be made only if:
 (1) the deposit is essential to protect the assets of depositors up to the amount guaranteed;
 (2) the investment will not result in loss of state funds;
 (3) failure of the institution will have a `seriously adverse impact on other financial institutions.'
The deposit may be directed `even though the resultmay be reduced income from the funds deposited.'
Section 2 of the Act authorizes the director to (1) reclassify claims, (2) classify claims for funds deposited based upon the amount of the claim, and (3) cause the financial institution to issue stock, notes or debentures to any class of depositors.
The issues presented are whether the Act is unconstitutional for any of the following reasons:
(1) Violates Article XIII, section 3:
 The credit of the state shall never be given or loaned in aid of any individual, association, or corporation, . . .
(2) Violates Article III, section 18:
 The Legislature shall not pass local or special laws in any of the following cases, that is to say:
. . .
 Granting to any corporation, association, or individual any special or exclusive privileges, immunity, or franchise whatever; . . .
(3) Violates Article I, section 16:
 No bill of attainder, ex post facto law, or law impairing the obligation of contracts, or making any irrevocable grant of special privileges or immunities shall be passed.
 (4) Violates either Article II, section 1, or Article III, section 1, (improper delegation of legislative authority.
(1)Does LB 926 have the effect of `extending the credit ofthe state in aid of any individual, association or corporation'contrary to the provisions of Article XIII, section3, of the Nebraska Constitution?
The Act provides that the deposit or investment in the institution under receivership may result in reduced income to the state. It would seem fairly obvious that this Act may have the effect of providing aid or assistance to a private enterprise.
Constitutionality is judged on what is authorized to be done, not merely on the basis of what is sought to be done by the parties. City of Beatrice v. Wright, 72 Neb. 689,101 N.W. 1039, Sumnerville v. North Platte Valley WeatherControl Dist., 170 Neb. 46, 101 N.W.2d 748.
Legislation which serves a public purpose is not unconstitutionally impermissible under Article XIII, section 3, because incidental benefits may occur to others. Lenstromv. Thone, 209 Neb. 783, 311 N.W.2d 884, 888 (1981). The issue then is whether this legislation is for a public purpose. The Nebraska Supreme Court recently stated:
 It is for the Legislature to decide in the first instance what is and what is not a public purpose, but its determination is not conclusive on the courts. However, to justify a court in declaring a statute invalid because its object is not a public purpose, the absence of public purpose must be so clear and palpable as to be immediately perceptible to the reasonable mind. Chase v. County of Douglas, 195 Neb. 838, 241 N.W.2d 334 (1976). Lenstrom v. Thone, supra.
The maintenance of a viable banking industry has long been recognized as in the public welfare. For example, inPlacek v. Edstrom, 148 Neb. 79, 26 N.W.2d 489 (1947), the Nebraska Supreme Court stated:
 It is generally held that: `Banks are indispensable agencies through which the industry, trade, and commerce of all civilized countries and communities are carried on; the business which they transact, though for private profit, is of a pre-eminently public nature, and is therefore universally recognized as a proper subject of legislative regulation under the police power of the state. The power of the legislature in this regard is supreme, subject only to such limitations as are imposed by the fundamental law.'
 Id. at 92, 26 N.W.2d at 497 (citation omitted).See also, Mr. Justice Oliver Wendell Holmes' decision inNoble State Bank v. Haskell, 219 U.S. 104, 31 S.Ct. 186
(1911).
If the legislative purpose in adopting this legislation is to maintain a viable banking system in this state, a public purpose would be promoted. Section 1 of the Act may be implemented only if `failure of the institution' would have `an adverse impact on other financial institutions in the state.' It is at least questionable as to whether the `absence of a public purpose' is `so clear and palpable as to be perceptible to the reasonable mind.' We, therefore, cannot conclude that this provision is unconstitutional under Article III, section 18.
2. Whether the classification of institutions in which depositsmay be made under the Act constitutes special legislationin contravention of Article III, section 18, orArticle I, section 16 of the Nebraska Constitution?
Pertinent portions of Article III, section 18, and ArticleI, section 16, of the Nebraska Constitution are:
 The Legislature shall not pass local or special laws in any of the following cases, that is to say:
. . .
 Granting to any corporation, association, or individual any special or exclusive privileges, immunity, or franchise whatever; . . .
Article III, section 18.
 No bill of attainder, ex post facto law, or law impairing the obligation of contracts, or making any irrevocable grant of special privileges or immunities shall be passed.
Article I, section 16.
The basic constitutional rules appropriate to these sections are set forth in United Community Services v.Omaha National Bank, 162 Neb. 786, 77 N.W.2d 576 (1956):
 "The power of classification rests with the legislature, and this power cannot be interfered with by the courts, unless it is clearly apparent that the legislature has by an artificial and baseless classification attempted to evade and violate the provisions of the constitution prohibiting local and special legislation." Allan v. Kennard, 81 Neb. 289, 116 N.W. 63, 65. See, also, State ex rel. Cone v. Bauman, 120 Neb. 77, 231 N.W. 693.
 Id. at 802, 77 N.W.2d at 587-88.
We cannot say that classifying institutions under receivership is an unreasonable classification under either of these constitutional provisions as they have been interpreted by the Nebraska Supreme Court.
3. Whether classification of claims as to the amount of theclaim violates Article II, section 16, of the Nebraska Constitutionor Article I, section 10, of the U.S. Constitutionas to those claims which have already matured?
Classification of claims as to amounts would not appear to be an unconstitutionally impermissible classification as to claims arising after the effective date of the Act.
It would appear that under present Nebraska law creditors, including depositors would share pro rata in distribution of assets of a financial institution under receivership. Section 8-1,110, R.R.S. Nebraska; State exrel. Sorensen v. State Bank of Belvidere, 122 Neb. 797,240 N.W. 474 (1932). The depositors have a lien on the assets of the insolvent institution according to § 8-1,110, R.R.S. Nebraska, which provides in part:
 The claims of depositors for deposits not otherwise secured and claims of holders of exchange shall have priority over all other claims, except federal, state, County, and municipal taxes, and subject to such taxes shall, at the time of the declaration of insolvency of a bank, be a first lien on all the assets of the bank from which they are due and thus in liquidation, . . . § 8-1,110, R.R.S. Nebraska (emphasis ours).
See also, State ex rel. Sorensen v. State Bank of Omaha,128 Neb. 148, 258 N.W. 280 (1934).
The Supreme Court of Nebraska in Luikart v. Higgins,130 Neb. 395, 264 N.W. 903 (1936), has recognized that the legislature may change the remedy and methods of procedure under a past as well as a future contract.
The legislature may not, however, impair the substantive rights of a party.
In Hessen Siak Shams v. Nebraska State Bank ofBloomfield, Neb., 48 F.2d 894 (8th Cir. 1931), the Eighth Circuit Court of Appeals held a statutorily authorized reorganization plan to be unconstitutional, stating:
 But this plaintiff has made no new contracts, and it was not within the power of the Legislature to impair by statutory enactment the obligation of the contract he had nor to deprive him of any of his substantial security. If, therefore, the reorganization plan of the statute and what has been done under it accomplish such a wrong to the plaintiff, he cannot be without remedy in this court. Id. at 896.
An Act which accelerated the terms of liability and payment was held to be unconstitutional in Luikart v.Higgins, 130 Neb. 395, 264 N.W. 903 (1936), where the court stated:
 Again, the 1930 amendment changes the time for payment of the stockholders' double liability from the time when the assets of the bank are exhausted to immediate payment upon an adjudication of insolvency. It would seem that this court may take judicial notice of the public records of the state that the liquidation of insolvent state banks requires several years. This change in the time of payment accelerates the date the liability is due and thus changes the obligation. Since time and method of payment are material parts of contractual obligations, a change thereof is an impairment. U.S. Const. art. I, sec. 10.
 The acceleration of the time of payment, which the 1930 amendment provides, deprives the stockholder of the use of the money for the period of time required for the liquidation of the bank. This increases the obligation materially, and increases the contractual liability. O'Connor v. Hartford Accident Indemnity Co., 97 Conn. 8, 115 A. 484; Shouse v. Quinley, 37 P.2d (Cal.) 89; Edwards v. Kearzey, 96 U.S. 595.
 Id. at 398-99, 264 N.W. at 904-05.
The general authorities further cast serious doubt on the constitutionality of section 2 as to existing creditors of financial institutions. Corpus Juris Secundum states:
 Regulation of priorities. While some authorities have sustained an act regulating the priorities as between creditors whose debts were contracted prior to its passage, others have ruled that in its application to prior contracts such a statute or constitutional provision is unconstitutional as impairing their obligation, and the latter rule has been said to be supported by the weight of authority and reason.
16A C.J.S., Constitutional Law, § 388 pg. 70. Further, American Jurisprudence states:
 In determining whether a statute creating preferences in the distribution of insolvent estates impairs the obligation of contracts, the cases depend largely on the question whether the statute affects merely the remedy or whether it alters the substantive rights of the parties. On the one hand, it has been held that a statute giving certain claims priority in insolvency proceedings involves no unconstitutional impairment of contract rights as applied to claims of creditors in existence at the time the statute was enacted, on the principle that it merely affects the remedy. . . . The legislature may constitutionally change the priority of payment as to existing contracts where the creditor has no lien. On the other hand, there is authority which supports the view that once the debt has been contracted, a statute which varies or alters the relationship in any way is unconstitutional as impairing the obligation of contracts.
 42 Am.Jur.2d Insolvency, § 58 pg. 1242-3 (emphasis ours).
If applying this Act to existing insolvency proceedings would be unconstitutional, a court would undoubtedly give this section effect only as to future or prospective insolvency proceedings. It is our opinion that, as drafted, Section 2 of this legislation would therefore be effective only as to prospective insolvency proceedings. This section would thus be constitutional, but not effective as to the existing Commonwealth insolvency.
4. Whether section 2 of the Act is unconstitutional as animpermissible delegation to administration authorities oflegislative authority under Article II, section 1, and ArticleIII, section 1, of the Nebraska Constitution?
Section 2 of the Act authorizes the classification of claims as to amount by the Director and the issuance of stock, notes or debentures to some classes. The Act does not provide any guidelines as to what amounts are to be used nor as to who should receive stock, notes or debentures. In addition, the Act is silent as to the criteria to be utilized in setting the terms and conditions of any such stock, notes or debentures.
Under Article II, section 1, and Article III, section1, of the Nebraska Constitution, legislative authority is vested in the legislature. Legislative authority may be delegated to administrative agencies. The constitutional issue is whether sufficient standards have been designated by the legislature.
In the recent case of State ex rel. Douglas v.Nebraska Mortgage Finance, 204 Neb. 445, 283 N.W.2d 12, Chief Justice Krivosha set forth the most current tests to be applied in this regard:
 The question of how far the Legislature should go in filling in the details of the standards which an administrative agency is to apply raises large issues of policy in which the Legislature has a wide discretion, and the court shall be reluctant to interfere with such discretion. Such standards in conferring discretionary power upon an administrative agency must be reasonably adequate, sufficient, and definite for the guidance of the agency in the exercise of the power conferred upon it and must also be sufficient to enable those affected to know their rights and obligations. 1 Am.Jur.2d, Administrative Law, § 117, p. 923. The modern tendency is to be more liberal in permitting grants of discretion to an administrative agency in order to facilitate the administration of laws as the complexity of economic and governmental conditions increases. 1 Am.Jur.2d, Administrative Law, § 118, p. 925. This is particularly true where, as here, the violation of any such regulation does not constitute a criminal act. We do not believe the authority granted the Fund by the Legislature is an unlawful delegation of powers reserved to the Legislature. Id. at 283 N.W.2d 24.
While the court has thus allowed a rather broad latitude, this Act provides absolutely no standard by which the director is to determine the classification as to amount or as to the effect of such classification. It is our opinion that this does constitute an impermissible delegation in contravention of Article II, section 1, and Article III, section 1, of the Nebraska Constitution and hence is unconstitutional as drafted.
Yours very truly,
Edwin C. Perry, Special Assistant Attorney General